280   People ex rel. Durham Realty Corp. *v.* La Fetra.

First Department, December, 1920.          [Vol. 195.

The People of the State of New York ex rel. Durham
Realty Corporation, Appellant, *v.* Edward B. La Fetra,
a Justice of the City Court of the City of New York,
Respondent.

First Department, December 24, 1920.

**Landlord and tenant — mandamus compelling issuance of precept
in summary proceedings — statutes — sufficiency of emergency
message by Governor certifying to necessity for immediate pas-
sage of bill — examination of official records of Legislature to
determine validity of statute — effect of certification by Secretary
of State to passage of act — impeaching legislative records by
extrinsic evidence.**

Mandamus is the appropriate remedy to compel a justice of the City Court
of the City of New York to issue a precept in summary proceedings for
the removal of a tenant.

The fact that the Governor's emergency message certifying to the necessity
for the immediate passage of chapter 942 of the Laws of 1920, which was
sent after the bill had been amended so as to limit its application to cer-
tain cities, referred to the title as it originally stood, is immaterial where
the reference to the number and reprint number of the bill clearly indicated
that the act in question was the one intended.

As a general rule it is not permissible to examine the official records of
legislative bodies in passing on the validity of a statute, but where the
validity of a statute depends upon a particular thing being shown or not
shown by the official journals, it is proper to examine them.

The certification by the Secretary of State that a statute was duly enacted
does not preclude inquiry with respect to whether the provisions of article
3, section 15, of the State Constitution, requiring a bill to be printed and on
the desks of the members of the Legislature for three days before passage
unless the Governor shall have certified by an emergency message to the
necessity for immediate passage, have been complied with.

Parol evidence cannot be received to impeach the official certification by
the presiding officers of the Legislature or the journals of the respective
houses as to the passage of a bill; therefore, the affidavits of the petitioner
tending to impeach the official journals could not be considered in deter-
mining whether chapter 942 of the Laws of 1920 was duly enacted.

Appeal by the relator, Durham Realty Corporation, from an
order of the Supreme Court, made at the New York Special
Term and entered in the office of the clerk of the county of

People ex rel. Durham Realty Corp. *v.* La Fetra. **281**

App. Div.]        First Department, December, 1920.

New York on the 13th day of December, 1920, denying relator's motion for a peremptory writ of mandamus.

*George L. Ingraham* of counsel [*John M. Stoddard* and *Alexander C. MacNulty* with him on the brief], for the appellant.

*Robert P. Beyer, Deputy Attorney-General,* for the respondent.

*William D. Guthrie* and *Julius Henry Cohen, Special Deputy Attorneys-General,* for the Attorney-General.

*Elmer G. Sammis* and *Bernard Hershkopf,* for the Joint Legislative Committee on Housing, as *amici curiæ.*

Laughlin, J.:

On the 20th day of October, 1920, the relator presented a petition in due form to the City Court of the City of New York showing that it was the owner of an apartment house known as 490 West End avenue, in the borough of Manhattan, New York; that on or about the 28th day of May, 1917, by a lease in writing it let to one Weil an apartment in said building for the term of three years ending September 30, 1920; that the tenant was holding over after the expiration of the term without its permission; that the proceeding was not one of those authorized or provided for in subdivision 1-a of section 2231 of the Code of Civil Procedure, as added by chapter 942 of the Laws of 1920, and that it made a formal application in writing to said court for the issuance of a precept for the removal of the tenant, which was denied in writing by the defendant, who is a justice of the said court, on the ground that the issuance of the precept was not authorized by the statute. The motion was for a mandamus requiring the issuance of a precept. Mandamus in such case is the appropriate remedy. (*People ex rel. Lewis* v. *Fowler,* 229 N. Y. 84.) The contentions here made with respect to the invalidity of the statute withdrawing the remedy of summary proceeding and of the right of the relator to the remedy as it existed when the contract was made are answered by the opinion in *People*

*ex rel. Brixton Operating Corporation* v. *La Fetra* (194 App. Div. 523), argued and decided herewith.

The appellant, however, makes a further point that said chapter 942, withdrawing the summary proceeding remedy with respect to tenants holding over after the expiration of their term, with certain exceptions not here in point, was not passed in the manner provided by article 3, section 15, of the Constitution, which provides as follows: " No bill shall be passed or become a law unless it shall have been printed and upon the desks of the members, in its final form, at least three calendar legislative days prior to its final passage, unless the Governor, or the acting Governor, shall have certified to the necessity of its immediate passage, under his hand and the seal of the State."

Concededly the bill was not printed and upon the desks of the members in its final form three calendar legislative days prior to its final passage. It is claimed that the Governor did not fully certify to the necessity of its immediate passage so as to warrant its passage without its having been so printed and upon the desks of the members. Its authenticity was duly certified by the presiding officer of each house and it was signed by the Governor, and appears in the official edition of the laws.

The appellant in support of this claim did not rely on the bill itself and the official certification thereof and official journals of the two houses but attempted by affidavits to impeach the official journals.

Chapter 942 originated in the Senate where it was introduced on the twentieth of September and became known as Senate Bill No. 25 and as printed was given the introductory number 25 and the printed number 25. It was originally intended to apply to all cities of the first class and to cities in a county adjoining and the title of the bill so provided, and it was designed to repeal chapter 137 of the Laws of 1920 which applied to the same cities. The bill was evidently referred to the committee on affairs of cities. The journal of the Senate* shows that on the twenty-fourth of September that committee was discharged from further consideration of the bill; that the

---

* See vol. 2, Appendix II, pp. 90-92.— [REP.

rules were suspended and the bill was ordered to a third reading; that when it was reached on the order of third reading, it was recommitted to the committee with instructions to amend and report it forthwith to be reprinted as amended and restored to its place on the order of third reading, and that the amendment related to the title, which was changed so as to limit it to cities of a population of 1,000,000 or more and cities in a county adjoining such a city. The effect of that was to except from the bill the cities of Buffalo and Rochester. The Senate journal further shows that the committee reported the bill amended as directed and that it was ordered reprinted and placed on the order of third reading; that a message from the Governor addressed " To the Legislature " in the form prescribed by said provisions of the Constitution, was then received at the hands of his secretary and read and incorporated in the journal; that the Governor's message recited that, it appearing to his satisfaction that the public interest required it, he certified " to the necessity of the immediate passage of Senate bill (Int. No. 25, Printed No. 25)," and he quoted the title of the bill as originally introduced, followed by the words " as amended." The bill as so amended was then passed and the clerk was directed to deliver the bill to the Assembly and request concurrence therein. It evidently was then again passed by the Senate, for its journal* shows that it was returned by the Assembly with a message to the effect that it was concurred in by the Assembly with two amendments set forth in full, the effect of which was to require the petitioner, who desired possession for the purpose of demolishing the premises with the intention of constructing a new building, to show that such desire was in good faith, and to extend the bill, in so far as it authorized landlords to regain possession of their property, to a proceeding to recover possession where the building had been sold in good faith to a cooperative ownership corporation and was to be occupied personally by the stockholders. The journal of the Assembly† shows that the bill was received from the Senate for concurrence, and the title of the bill as so amended is set forth and

* See vol. 2, Appendix II, pp. 100–102.— [REP.
† See vol. 4, Appendix II, pp. 97–99.— [REP.

the numbers by which it had then come to be known, namely, " (No. 60, Rec. No. 21) ; " that it then had a first reading in the Assembly and was amended as already stated, and was then read a second time and ordered to a third reading; that thereupon a message from the Governor, in due form as required by these provisions of the Constitution, addressed " To the Legislature," was received, reciting that, it appearing to his satisfaction that the public interest required it, he hereby certified to the necessity of the immediate passage of " Senate bill (Int. No. 25, Assembly Reprint No. 68, Printed No. 25)," but quoted the original title of the bill; that the bill as thus amended by the Assembly thereupon had its third reading and was duly passed. Although the message of the Governor quoted the original title of the bill, it is perfectly plain from the specification in the message that it related to the bill bearing the reprint number 68, that the message referred to the bill as amended by the Senate and as it was then pending in the Assembly. It further appears by the journal of the Assembly* that the Speaker, on putting the question whether the House would agree to the final passage of the bill, stated that the necessity for its immediate passage had been certified by the Governor, and that after its final passage it was ordered returned to the Senate with a message that the Assembly had concurred in its passage with said amendments, and that thereafter* the Assembly received the bill from the Senate entitled " (No. 60, Assembly Reprint No. 68, Rec. No. 21)," giving the title as originally amended in the Senate, which was merely a notification to the Assembly that the Senate had concurred, for the bill was thereupon ordered returned to the Senate. It further appears from the journal of the Senate† that the Senate, on receipt of the bill from the Assembly with said amendments the first time, duly concurred therein, and that thereupon another message was received from the Governor in due form under the Constitution, addressed " To the Legislature," which recited that, it appearing to his satisfaction that the public interest required it, he certified " to the necessity of the immediate passage of Senate

---

* See vol. 4, Appendix II, pp. 99, 114.— [REP.

† See vol. 2, Appendix II, pp. 100–102.— [REP.

bill (Int. No. 25, Printed No. 60, Assembly Reprint No. 68),"
giving the title as amended by the Senate, confining it to cities
having a population of 1,000,000 or more and cities in a
county adjoining, and that thereupon the bill, as so amended
by the Assembly, had its third reading and was put on final
passage by the President of the Senate who, in putting the
question, stated that the Governor had certified to the necessity
of the immediate passage of the bill, and it was thereupon
passed.  It thus appears that the journal of each house shows
that the members thereof understood that the Governor was
certifying to the necessity of the immediate passage of the
bill in its amended form, and that he so intended is evidenced
by his reference to the Assembly reprint of the bill, which
included the amendments and evidently was the final reprint
showing the bill in the precise form in which it was enacted,
and by his approval thereof.  At most, there was an error
in the original message with respect to the description of the
title of the bill as it was then before the Senate, but that the
Governor must have understood that the title had been
amended is shown by his designation of it by a number which
identified the bill as it then existed.  In addition to this
record evidence, conflicting affidavits were presented with
respect to the number of messages sent to the Legislature by
the Governor concerning this bill, and with respect to the
action of the Senate and Assembly on the bill before and
after the receipt of such messages.  On the part of the
appellant, these affidavits tend to impeach the records to
which reference has been made, and the affidavits on the
part of the respondent support the records and plainly show
that the bill was duly passed.  In referring to this evidence
*dehors* the record, we do not wish to be understood as indicating
an opinion that a statute may be impeached by such evidence.
The general rule is that it is not even competent to examine
the official records of the legislative bodies in passing upon
the validity of a statute (*Hunt* v. *Van Alstyne*, 25 Wend. 605;
*Field* v. *Clark*, 143 U. S. 649; *Ritchie* v. *Richards*, 14 Utah,
345; *People ex rel. Purdy* v. *Commissioners of Highways of
Marlborough*, 54 N. Y. 276; *McCulloch* v. *State*, 11 Ind. 424;
*Miller* v. *State*, 3 Ohio St. 475); but where the validity
of a statute depends upon a particular thing being shown or

not shown by the official journals, it is proper to examine them. (*Happel* v. *Brethauer*, 70 Ill. 166; *Wilkes County* v. *Coler*, 180 U. S. 506; *Bank* v. *Commissioners*, 116 N. C. 214; *People* v. *Petrea*, 92 N. Y. 128. See, also, *Kittinger* v. *Buffalo Traction Co.*, 160 N. Y. 377.) Our attention has not been drawn to any statute requiring that the certification of the passage of a bill shall show whether or not it was printed and on the desks of the members in its final form for the requisite period before it was passed, or whether that requirement was dispensed with by an emergency message from the Governor. It may well be that such certification, if required to be made by the presiding officers of the respective houses, could not be impeached even by the official records; but if there be no such requirement, the mere fact that the Secretary of State has certified that the statute was duly enacted does not necessarily, I think, preclude an inquiry with respect to whether these constitutional provisions were complied with. The official journals may be consulted in support of a statute, but we are of opinion that in no event could parol evidence be received to impeach the official certification by the presiding officers or the journals of the respective houses, for that is not permitted even in jurisdictions where recourse may be had to the official journals. (*Taylor* v. *Beckham*, 108 Ky. 278; *State ex rel. Herron* v. *Smith*, 44 Ohio St. 348; *McCulloch* v. *State, supra; Eld* v. *Gorham*, 20 Conn. 8; *Wise* v. *Bigger*, 79 Va. 269; *People* v. *Hatch*, 33 Ill. 9.)

The affidavits tending to impeach the official journals must, therefore, be excluded from consideration. We do not deem it necessary to examine the statutes, which are not cited, with respect to the certification of the passage of laws, or to decide whether the official journals may be consulted on this point to annul an enactment, for in the case at bar those journals do not tend to show a non-compliance with the provisions of the Constitution. It will be observed that the Constitution does not prescribe how the bill shall be identified in the emergency certificate, or that the message shall be spread upon the journals of the Assembly and the Senate, or that a duplicate shall be delivered to each house. If these constitutional provisions required a construction that the Legislature was limited to the passage of the bill in the precise form

in which it was at the moment it received the emergency message from the Governor, that is sufficiently shown here by the official journals; but I think that would be too narrow a construction to place on the Constitution and that, at least, amendments not materially affecting the purpose and object of the bill may be made after the receipt of the message from the Governor. It is manifest that the subsequent approval of the bill by the Governor is entitled to great weight as showing that the bill as it came to him is the bill the immediate passage of which he deemed required by the public interest. The requirement of the emergency message is to dispense with and obviate the delay otherwise required to prevent hasty legislation. It appears that this constitutional amendment as originally proposed did not contain the words requiring that the bill should be upon the desks of the members " in its final form," and that they were added by amendment. (Revised Record of the Constitutional Convention of 1894, vol. 1, pp. 887–917.) It will be observed that the constitutional provisions with reference to the emergency message are directed to the bill, and that the provisions of the Constitution recognize a distinction between the *bill* and the *bill in its final form*. It is regarded as the same bill from the time of its introduction until it passes. If it were held that there could be no change in the bill, even to correct a typographical error or to clarify its meaning, after the receipt of the Governor's message, the validity of all such legislation would be endangered by an inquiry with respect to the time of the receipt of the message and the precise form of the bill at that time. If that were intended, the Constitution would have required that a record of those matters should be made and preserved, but it does not.

It follows that the order should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., DOWLING, MERRELL and GREENBAUM, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.