MRS. LUTIE O. McKELLEY, COMPLAINANT, APPELLEE, *v.* CITY OF MURFREESBORO, DEFENDANT, APPELLANT.

(*Nashville*, December Term, 1930.)

Opinion filed March 14, 1931.

Seth M. Walker and Wm. Waller, for complainant, appellee.

Jas. D. Richardson, for defendant, appellant.

Mr. Justice Chambliss delivered the opinion of the Court.

The determinative question presented is whether or not the municipality had power under its charter, in the absence of either a local or general legislative act directed to the specific matter involved, to enact and enforce an

ordinance prohibiting the erection and operation of filling stations within a prescribed area.

The bill also attacked the ordinance as unreasonable on several grounds, in substance, that, (1) other commercial enterprises are not excluded, (2) that complainant's lot possesses greater value for commercial purposes than for residential purposes, (3) that the exclusion of complainant's lot from the territory described is arbitrary because other filling stations are located near by, and (4) that there are one or two other filling stations within the prescribed territory, the operation of which is not prohibited.

The learned Chancellor denied these contentions, holding that the several grounds relied on were directly dealt with and disposed of in the recent case of *Spencer-Sturla Company* v. *Memphis*, 155 Tenn., at pages 87, 91, 92 and 88. In this view we concur.

However, the Chancellor overruled the ground of demurrer interposed by the City which assailed the validity of the ordinance as beyond the power delegated by the Legislature to the municipality, and held the ordinance void. The ordinance reads:

"An ordinance prohibiting oil, gasoline or filling stations and public garages and abbatoirs from being located *near residences* in certain parts of the City of Murfreesboro, Tennessee.

"Section 1. Be it enacted by the City Council of the City of Murfreesboro, Tennessee, that no oil or filling stations or public garage or abbatoir shall hereafter be installed, constructed, maintained or operated on North Maple Street in said City, from the intersection of said Maple Street with Lytle Street, to the northern terminus of said Maple Street, nor on Church Street in said City, from the intersection of said Church Street with College

Street, to the northern. terminus of said Church Street; nor in that part of said city lying east of North Maple Street, and east of South Church Street, and north of State Street.

"Sec. 2. Be it further ordained that the public health and the protection of said city from fire require the passage of this ordinance.

"Sec. 3. Be it further ordained, that all ordinances in conflict with this ordinance be, and the same are, hereby repealed.

"Sec. 4. Be it further ordained, that the preservation of the public .peace, health and safety renders the passage of this ordinance at the earliest practicable time imperative, and by reason of its urgency, that this ordinance take effect from and after its passage."

The City relies on its broad charter powers. The pertinent sections of the charter are as follows:

"That the City of Murfreesboro is hereby vested with the general powers and authority to enact and enforce by imposing of reasonable fines, or by imprisonment, or by both, all ordinances necessary for the protection of life, health, and property; to regulate and control, and tax all business and public utilities; to declare, prevent, and summarily abate nuisances of any character whatsoever, which authority shall extend not to exceed three miles from the corporate limits; to preserve and enforce the good government and general welfare or order and security of such city, even to revoke licenses, and shall have all police powers necessary for its government, not in conflict with the general laws applicable to all cities of this State; . . . (Sec. 27).

"That all powers not inconsistent with the constitution and laws of this State that are necessary for the proper administration of the affairs and for the government and

control and management of the said City, are hereby vested in the council, and their successors, and they are authorized and empowered to enact all such by-laws and ordinances not inconsistent with the constitution and laws of Tennessee, and with the provision of this Act, necessary to carry out and perform the same.'' (Sec. 35.)

The Chancellor in his opinion relies, as do counsel here, on *Long* v. *Taxing District*, 7 Lea, 134, decided fifty years ago, wherein it was held that the City ordinance, or ''by law,'' then before the Court, not being intended ''to regulate the administration of the local government, or the conduct of the citizens with a view to health and comfort,'' but ''rather intended to facilitate the enforcement of the criminal laws against theft of loose cotton,'' was beyond the powers conferred by the general charter.

With particular application to the ordinance then under consideration, the Court further said, ''the enactment of criminal laws, and of all legislation necessary for the enforcement of those laws, either in the way of detection or punishment, belongs to the Legislature of the State.'' The Court held that power to enact this class of laws, to which the ordinance under consideration belonged, being peculiarly within the province of the Legislature, would not be recognized as within the general charter powers delegated to a municipality unless specifically conferred. However, while enforcing this restriction, the Court in the opinion in that case conceded that under general charter powers a municipality would be authorized to enact ''suitable ordinances for administering the government of the City, the preservation of the health and comfort of its inhabitants, the convenient transaction of business within its limits, and for the performance of its

general duties required by law of municipal corporations.'' That opinion affirmed, and we now re-affirm, that neither by implication nor express grant of power can a municipality be authorized to enact ordinances which are unreasonable in operation and effect, or which conflict with either the National or State constitutions, the statutes of the State or the general principles of the common law adopted or in force in the State.

We find nothing in the ordinance under consideration which appears to violate any of these principles of limitation of the powers of the municipality, and it therefore becomes necessary only to determine whether or not the ordinance here under consideration may fairly be conceded to come within the general powers conferred by the charter of Murfreesboro.

In this connection we note that counsel for Mrs. Mc-Kelley quote extensively from the leading case of *Standard Oil Co.* v. *Kearney* (Neb. 1921), 184 N. W., 109. While the opinion in this case is relied on in support of the insistence that the ordinance is unreasonable and therefore invalid, we quote therefrom, as bearing upon the insistence that power had not been delegated by the Legislature to enact this ordinance, the following statement of the general rule:

''Generally speaking, it is within the right of municipal legislative authority, acting under the 'general welfare' clause, to determine what ordinances are required to protect and secure the public health, comfort and safety, but it may not, under the guise of such power, enact ordinances which are unreasonable, or discriminatory, or an invasion of constitutional rights.''

In *Jones* v. *Nashville,* 109 Tenn., 558, it is said that municipal ordinances ''must be authorized by the char-

ter of the corporation, or general laws applying thereto and consistent with the object and purposes of its creation." This case also emphasizes the limitation that ordinances must be reasonable and consonant with the constitution and statutes and with the general principles of the common law, but this case and others appear to recognize that general powers may be conferred upon municipalities to promote the general welfare of the community in either of the two ways mentioned in the foregoing quotation, that is by the charter, or by general laws.

While applying strictly to all ordinances the limitation of reasonableness, the extent of the powers delegated by general provisions may be construed liberally. Specific enumeration is not essential when the intention of the legislation to confer broad powers is manifest. Unquestionably the modern tendency is toward the enlargement of the scope of the delegation to local subdivisions, or arms, of the State of powers of local government. The growth in number and size of these governmental sub-divisions and their varying requirements tend to make centralization in the General Assembly of direction of the particulars of localized conditions less and less desirable; and the delegation of such powers to local governments has been found to be in the interest of more effective administration of the law, and of just and sound results to the people of the several independent communities affected.

Looking to the charter powers already set forth, it will be seen that they are unusually broad, including "all ordinances necessary for the protection of life, health and property . . . to preserve and enforce the good government and general welfare or order and security

of such city . . . all police powers necessary for its government, not in conflict with the general laws.'' And by another section, this charter granted by the Legislature in 1925 confers ''all powers not inconsistent with the constitution and laws of this State that are necessary for the proper administration of the affairs and for the government and control and management of said city.''

It is difficult to conceive of broader language. It is true that the Legislature has from time to time enacted what were known as zoning laws under which municipalities are more specifically empowered to regulate by ordinance the use to which selected areas may by ordinances be set apart and restricted to a limited use. It was under such a special law that the ordinance dealt with by this Court in *Spencer-Sturla Co.* v. *Memphis, supra,* was enacted. By the passage of these zoning laws the Legislature has expressly recognized the desirability and propriety of ordinances regulating and restricting the uses to which property owners may devote their holdings of real estate, and we can conceive of no sound basis for the insistence that this power of regulation may be conferred upon a municipality only by a general or special law directed to this particular phase of municipal government. The insistence is that the ordinance in question is a proper police regulation, and it must be conceded that the charter expressly confers upon the municipality ''all police powers necessary for its government.'' Clearly the regulation and prevention of traffic congestion, which the proof in this case tends to show would be brought about by the placing of this filling station on the lot in question, is a matter affecting the safety and welfare of the City.

It will be seen that the ordinance prohibits the location of oil or filling stations within the area described, upon

the theory, as set forth in the ordinance, that this restriction is necessary for "the public health and the protection of said city from fire," and also for "the preservation of the public peace, health and safety." We are unable to escape the conclusion that the power to enact an ordinance for the purposes set forth comes within the grant, either express or implied, of powers conferred by the charter of the municipality. The question goes back to the one of reasonableness and, as already indicated, we concur with the Chancellor that the issues presented under this head are controlled and determined by the opinion of this Court in *Spencer-Sturla Co.* v. *Memphis, supra.*

It results that the decree of the Chancellor must be reversed.