STATE of Tennessee, ex rel. SCA
CHEMICAL WASTE SERVICES,
INC., Plaintiff-Appellant,

v.

Charles KONIGSBERG, Jr., M.D., Mph,
Director and Health Officer, Memphis
and Shelby County Health Department
and Christ T. Sanidas, Chief Building
Official, Shelby County, Tennessee, De-
fendants-Appellees,

and

Delta Tool and Die, Inc.; Ralph Adams;
George Cook; People of Woodstock and
Board of Commissioners of Shelby
County, Tennessee, Intervenors-Appel-
lees.

Supreme Court of Tennessee,
at Jackson.

June 28, 1982.

William M. Walsh, Memphis, for plaintiff-appellant.

Carroll C. Johnson, J. Minor Tait, Jr., Asst. Shelby County Attys., Memphis, for defendants-appellees.

## OPINION

BROCK, Justice.

This is a mandamus action. The relator, SCA Chemical Waste Services, Inc., sued defendant Charles Konigsberg, Jr., as the Director and Chief Medical Officer of the Memphis and Shelby County Health Department, to require him to issue to relator a "clean air permit" in connection with the relator's proposed construction of a chemical waste treatment plant in Shelby County. Later, relator amended the action by adding defendant Christ T. Sanidas, the Chief Building Officer of Shelby County, seeking a writ against him to require the issuance of a building permit for the proposed chemical waste treatment plant. Following a hearing on the merits, the Chancellor found the issues in favor of the defendants and dismissed the complaint; relator has appealed to this Court seeking a reversal and a judgment requiring that the two permits be issued.

While the appeal was pending in this Court the relator-appellant filed a motion for consideration of post-judgment facts pursuant to Rule 14, Rules of Appellate Procedure. Most of the alleged post-judgment facts sought to be considered are pleadings and other matters concerning a subsequent suit between the same parties that is now pending in the trial court in Shelby County and are not relevant to this action, but one post-judgment fact sought to be considered is that the "clean air permit" which was the subject of the instant litigation was actually issued by the Shelby County Health Department on January 15, 1981. Rule 14 provides, in part:

"While neither controlling nor fully measuring the court's discretion, consideration generally will extend only to those facts, capable of ready demonstration, affecting the positions of the parties or the subject matter of the action such as mootness, bankruptcy, divorce, death, other judgments or proceedings, relief from the judgment requested or granted in the trial court, and other similar matters."

In our discretion we grant the motion insofar as it disclosed that the "clean air permit" has been issued after the appeal in this case was perfected; in all other things the motion to consider post-judgment facts is denied. We deem it quite inappropriate to consider upon this appeal matters pertaining to subsequent litigation now pending in the trial court in Shelby County.

Since the "clean air permit" has now been issued, we consider that this action, insofar as it sought the issuance of that permit, is now moot. However, for the sake of clarity, it will be necessary to mention the clean air permit and the proceedings in Shelby County with relation to it in the course of this opinion.

SCA Chemical Waste Services, Inc., is engaged in the business of disposing of hazardous wastes in Shelby County and proposes to construct a new facility to process such wastes. On September 4, 1980, it applied to the Memphis and Shelby County Health Department for the issuance of a clean air permit in connection with the proposed construction.

On October 6, 1980, the Council of the City of Memphis and the Board of Commissioners for Shelby County, in joint session, enacted a comprehensive new zoning ordinance to become effective on January 1, 1981. This new ordinance contained a category covering "refuse processing, treatment and storage" and required that a special permit be obtained from both the City Council and the County Commission when authorization for refuse processing, treatment and storage was sought. Prior to the

enactment of this new ordinance the area which contained the site of the relator's proposed treatment plant was zoned "heavy industrial" and no special permit was required for a use such as that proposed by the relator. On October 8, 1980, the relator and Illinois Central Railroad entered into a contract which would permit SCA to purchase approximately 30 acres of property located on Fite Road in Shelby County which was to be the site of relator's new waste treatment plant. At that time the zoning governing this piece of property was "heavy industrial" and would have permitted use of the property as intended by the relator for treatment of hazardous wastes.

On October 9, 1980, the relator applied for a grading and building permit from defendant, Sanidas, Chief Building Officer of Shelby County.

On October 22, 1980, the Board of Commissioners for Shelby County conducted a hearing with respect to the issuance of permits which would allow the relator to construct its hazardous waste treatment plant. At this hearing considerable anxiety was expressed indicating fear that the public welfare and safety of the residents of the county would be adversely affected by the construction of relator's plant and the hearing resulted in the adoption by the Commission of a resolution directing all county agencies not to issue any permits to relator for the construction of its hazardous waste treatment plant until January 15, 1981, and provided, further, that relator should meet all applicable standards in effect on January 15, 1981.

On October 27, 1980, SCA, the relator, filed the original complaint in this action against the defendant, Charles Konigsberg, Jr., M.D., Director, Memphis and Shelby County Health Department, seeking a writ mandating him to issue the requested clean air permit.

On November 3, 1980, the Shelby County Commission amended its resolution dated October 22, 1980, making it apply specifically to *any* proposed plant for hazardous waste treatment. Because of the importance of this resolution to the merits of this litigation, we quote it in full:

"Whereas, great public concern has been shown regarding the location of a chemical hazardous waste treatment plant in Shelby County; and

"Whereas, the Shelby County Commission by joint ordinance/resolution with the City of Memphis adopted a new zoning code on October 6, 1980, with its effective date being January 1, 1981; and whereas, this new zoning code allows for legislative review and safeguards to be placed upon any such plant via the special permit route; and

"Whereas, additional federal EPA guidelines and standards will become effective on November, 1980; and

"Whereas, pursuant to the health, welfare and safety of the citizens of Shelby County, this Commission deems it necessary for the aforementioned new zoning and EPA guidelines to be in effect when any permits are issued to this new industry.

"Now, therefore, be it resolved by the Board of County Commissioners of Shelby County, Tennessee, that the county administration, acting by and through any of the departments, boards, authorities, commissions or any other entity under its jurisdiction pursuant to Chapter 260 of the Private Acts of 1974 or any other applicable state or federal law, is directed not to issue any permits regard [sic] any proposed plant for hazardous waste treatment until January 15, 1981, provided that these plants meet all eligible standards of rules and regulations then in effect for the issuance of permits.

"Be it further resolved, that the aforementioned permits shall not be issued on or after January 15, 1981, until and unless the SCA Corporation submits an equal opportunity compliance statement to the appropriate office of the Shelby County Administration.

"Be it further resolved, that no permits of any nature shall be issued to anyone in Shelby County, who intends to construct a plant to process hazardous waste, until the complete system is tied into the

North Waste Treatment Plant is adequate to accept and treat the additional sewage."

Thereafter, on November 13, 1980, relator amended its complaint by adding defendant Christ T. Sanidas, Chief Building Officer of Shelby County, as a party defendant, seeking a mandate requiring him to issue a preliminary grading permit.

Following a trial on the merits, the trial court concluded that the County Board of Commissioners had not acted arbitrarily, capriciously, illegally, unlawfully or beyond its jurisdiction in adopting the resolutions of October 22, 1980, and November 3, 1980; that these resolutions were in all things valid and binding upon the defendants, Konigsberg and Sanidas, and, therefore, that these defendants were under no duty to issue the clean air permit and the building permit as sought by the complaint. Accordingly, the Chancellor dismissed the relator's action.

■■■ The first question presented for our decision is whether mandamus may be properly employed to determine the constitutional validity of a statute, ordinance or other legal directive that on its face requires that the defendant official shall not perform the act sought to be required of him by the relator. Defendants, of course, assert that mandamus may not be so used, but relator insists that such a use is proper. We decide this issue in favor of the relator. We have found no reported case deciding the question in this State; authorities from other jurisdictions are divided on the subject. Some courts have held that mandamus lies only to enforce a plain ministerial duty and since a plain ministerial duty cannot exist which is made to appear only by declaring a statute unconstitutional, the writ will not issue if it is necessary to declare unconstitutional a statute in conflict with the alleged duty sought to be enforced. *See,* 52 Am.Jur.2d *Mandamus* § 95 (1970) and cases there cited. Other decisions hold that if the right to the issuance of the writ is dependent on the unconstitutionality of a statute or ordinance the court has the power to pass upon the question of its validity and the court may, therefore, grant or refuse the writ depending upon whether or not it holds the statute or ordinance to be unconstitutional or valid. We adopt the latter view as the one more consonant with our continued effort to determine litigation on the merits rather than on procedural technicalities; moreover, it represents the definite trend of the more recent decisions of other courts. *See, People ex rel. Durham Realty Corporation v. La Fetra,* 186 N.Y.S. 63, 195 App.Div. 280 (1920), *aff'd* 130 N.E. 601, 230 N.Y. 429, 16 A.L.R. 152 (1921); *Figari v. New York Telephone Co.,* 303 N.Y. S.2d 245, 32 A.D.2d 434 (1969); *Los Angeles Free Press, Inc. v. City of Los Angeles,* 88 Cal.Rptr. 605, 9 Cal.App.3d 448 (1970); *Bal Harbour Village v. State ex rel. Giblin,* Fla. App., 299 So.2d 611 (1974); *Hering v. City of Royal Oak,* 326 Mich. 232, 40 N.W.2d 133 (1949); *People ex rel. Scott v. Kerner,* 32 Ill.2d 539, 208 N.E.2d 561 (1965); *Murray v. Curlett,* 228 Md. 239, 179. A.2d 698 (1962); 52 Am.Jur.2d *Mandamus* § 95 (1970). If the duty of the defendant official to perform an act is nondiscretionary, mandamus is a proper remedy even though the existence of that duty must be determined and adjudicated by the court in the mandamus suit.

We consider now the validity of the resolutions of the Shelby County Commission adopted on October 22, 1980, and November 3, 1980; these resolutions will be hereinafter treated together and referred to as one since they dealt with the single subject matter of preventing the issuance of building permits or other permits permitting the construction of hazardous waste treatment plants in Shelby County until January 15, 1981.

■■ Resolutions or ordinances of the type here considered have been referred to in cases from other jurisdictions as "stopgap" ordinances, "interim" ordinances, and as "emergency" ordinances because of their function and purpose to preserve temporarily the status quo of the municipality or section thereof to which they apply until a pending permanent zoning regulation could be finally adopted. As was noted by the

California Supreme Court, courts may take judicial notice of the fact that it takes much time to work out the details of a comprehensive zoning plan and it would be destructive of the plan if, during the period of its incubation and consideration, persons seeking to evade its operation should be permitted to enter upon a course of construction that would progress so far as to defeat, in whole or in part, the ultimate execution of the plan. *See Miller v. Board of Public Works*, 195 Cal. 477, 234 P. 381, 38 A.L.R. 1479 (1925), error dismissed 273 U.S. 781, 47 S.Ct. 460, 71 L.Ed. 889 (1927). Assuming that the municipality has the legislative authority to adopt such ordinances, and assuming that such an ordinance or resolution is of limited duration for a period of time that is reasonable under the circumstances and has been enacted in good faith and without discrimination, such ordinances have generally been upheld, especially by the later cases, so long as the purpose is to study and to develop a comprehensive zoning plan which does in fact proceed promptly, culminating in the expeditious adoption of appropriate zoning ordinances when the study is completed. *Almquist v. Marshan*, 308 Minn. 52, 245 N.W.2d 819 (1976); *Sherman v. Reavis*, 273 S.C. 542, 257 S.E.2d 735 (1979); *Taylor v. City of Little Rock*, 266 Ark. 384, 583 S.W.2d 72 (1979); *A. Copeland Enterprises, Inc. v. City of New Orleans*, La.App., 372 So.2d 764 (1979); *CEEED v. California Coastal Zone Conservation Commission*, 43 Cal.App.3d 306, 118 Cal.Rptr. 315 (1974); *Anderson v. Pima County*, 27 Ariz.App. 786, 558 P.2d 981 (1976); *Frisco Land & Min. Co. v. State*, 74 Cal.App.3d 736, 141 Cal.Rptr. 820 (1977); *McCurley v. El Reno*, 138 Okl. 92, 280 P. 467 (1929).

In our opinion authority for the County Commission to adopt the subject resolutions is found in Section 2.01 of Chapter 260 of the Private Acts of 1974 which provides:

"The legislative power of the county is vested in the Board of County Commissioners of Shelby County, hereinafter called the Legislative Branch. The legislative power includes all lawful authority to adopt resolutions governing the operation of government or regulating the conduct and affairs of the residents of the county, to fix the county tax rate, to adopt the county budget, to make appropriations of county funds for all legislative purposes and to exercise all other power of a legislative nature which is vested in the county by the constitution, general statutes, or special, local or private acts of the general assembly. The Legislative Branch may adopt any resolution which is not in conflict with the constitution of the State of Tennessee or this chapter."

We note, further, that it is provided in Section 1.01 of the same Act that ". . . the grants of power to county government shall be liberally construed."

Pertinent here is the decision of this Court in *McKelley v. City of Murfreesboro*, 162 Tenn. 304, 36 S.W.2d 99 (1931). Before the court in that case was an ordinance which had been passed prohibiting filling stations in certain portions of the City of Murfreesboro and the trial court had held that the city had no power to pass such an ordinance under its charter. This Court reversed, holding that the broad powers conferred upon the city by the charter allowed it to pass such an ordinance as part of its "police" power to promote the general safety and welfare of the city. The Court noted:

"While applying strictly to all ordinances the limitation to reasonableness, the extent of the powers delegated by general provisions may be construed liberally. Specific enumeration is not essential when the intention of the legislature to confer broad powers is manifest. Unquestionably the modern tendency is toward the enlargement of the scope of the delegation to local subdivisions, or arms, of the state of powers of local government." 36 S.W.2d at 101.

Thus, although specific authority to enact an interim zoning ordinance or regulation of the type here in issue, is not specifically mentioned in Section 2.01 of Chapter 260, Private Acts of 1974, above quoted, we have no hesitation in concluding that it

was intended to be included within the broad sweep of the legislative power granted by that section. *See, Draper v. Haynes,* Tenn., 567 S.W.2d 462 (1978).

■ It is our further conclusion that the Shelby County Commission complied with the procedure for the adoption of resolutions found in Article II, Section 2.03 of Chapter 260, Private Acts of 1974, which, in pertinent part, provides:

"1. The Legislative Branch shall exercise its legislative authority by resolution except as otherwise specifically provided by this chapter. Every resolution of the county commission shall be submitted to the county mayor. *If the county mayor signs it, the resolution shall become effective immediately or at a later date if the resolution so provides.* If the county mayor vetoes the resolution, he shall return it to the county commission for action on his veto, in which case it shall become effective only upon subsequent passage by a majority of all the members comprising the county commission, which passage must take place within thirty (30) days of receiving the county mayor's message of veto. If the county mayor fails either to sign or veto a resolution and to report his action to the county commission within ten (10) days after the resolution is submitted to him, he shall have no further power to veto the resolution and it shall become effective without his signature upon the expiration of the ten (10) day period or at a later date if the resolution so provides."

■ We consider now the reasonableness of the instant resolutions. At this point it must be kept in mind that it was on October 6, 1980, that the Council of the City of Memphis and the Board of Commissioners for Shelby County enacted the comprehensive new zoning ordinance to become effective on January 1, 1981, under the terms of which a special permit would be required from both the City Council and the County Commission before permits could be issued for the construction of a plant to be used for processing, treatment and storage of hazardous wastes. It was three days later,

October 9, 1980, that the relator applied for a grading and building permit from the defendant Sanidas, the Chief Building Officer of Shelby County. It was on October 8, 1980, that the relator and the Illinois Central Railroad entered into a contract which would permit relator to purchase approximately 30 acres of property for the proposed site of its new waste treatment plant. Clearly then, these facts bring this case within the "pending ordinance" or "interim ordinance" doctrine hereinabove mentioned. In a case involving facts closely approximating those in the instant case, the South Carolina court, in *Sherman v. Reavis, supra,* stated:

"We hold that a municipality may properly refuse a building permit for a land use in a newly annexed area when such use is repugnant to a pending and later enacted zoning ordinance.

"This holding, which is followed by numerous jurisdictions, is supported by sound reasoning. *See, generally,* Annot., 50 A.L.R.3d 596, 623–32 (1973). As stated in *Chicago Title & Trust Company v. Village of Palatine,* 22 Ill.App.2d 264, 160 N.E.2d 697, 700 (1959):

'It would be utterly illogical to hold that, after a zoning commission had prepared a comprehensive zoning ordinance or an amendment thereto, which was on file and open to public inspection and upon which public hearings had been held, and while the ordinance was under consideration, any person could by merely filing an application compel the municipality to issue a permit which would allow him to establish a use which he either knew or could have known would be forbidden by the proposed ordinance, and by so doing nullify the entire work of the municipality in endeavoring to carry out the purpose for which the zoning law was enacted.' " 257 S.E.2d at 737.

■ We approve the quoted statement from the *Sherman* opinion. It is obvious that in the case before us the relator, SCA Chemical Waste Services, Inc., was engaged in a race to avoid the more stringent zoning

and permit requirements for the operation of hazardous waste treatment plants which were contained in the new ordinance to become effective on January 1, 1981. We hold that the county acted properly and had authority to suspend the issuance of permits for such construction pending the effective date of its new joint ordinance resolution.

 Moreover, the relator is in no position to claim an estoppel or otherwise insist upon a vested right in the zoning regulations existing at the time it applied for the permit here sought; it had not begun construction nor even purchased the land upon which it proposed to build its plant. It is well settled that rights under an existing ordinance do not vest until substantial construction or substantial liabilities are incurred relating directly to construction. *Phillips Petroleum Co. v. City of Park Ridge*, 16 Ill.App.2d 555, 149 N.E.2d 344 (1958). *See*, 82 Am.Jur.2d *Zoning and Planning* § 240 (1976) and cases there cited.

Finally, we find no merit in the relator's contention that it has been the victim of discrimination. It is true that the resolution adopted on October 22, 1980, made specific reference to relator and did not mention other chemical waste facilities but no one else proposed to erect such a facility and this was corrected in the amended resolution adopted on November 3, 1980, which by its terms applied to "any proposed plant for hazardous waste treatment ...." Legislative classification in a zoning law, ordinance or resolution is valid if any possible reason can be conceived to justify it. *Davidson County v. Rogers*, 184 Tenn. 327, 198 S.W.2d 812 (1947). Reasons for dealing specifically and particularly with the subject of the handling, storage, transportation, treatment and disposal of hazardous chemical and other wastes may easily be found in the grave danger to society posed by such wastes in our environment today.

We conclude that the Special Chancellor was correct in upholding the validity of the resolutions of October 22, 1980, and November 3, 1980, adopted by the Board of Commissioners for Shelby County, imposing a moratorium upon the issuance of permits for the construction of hazardous waste treatment facilities in Shelby County until January 15, 1981, and, therefore, that defendant, Sanidas, was under no duty to issue the permit requested and, indeed, had no authority to issue the same. We affirm the decree of the Chancellor dismissing this action. Costs incurred upon appeal will be taxed against the relator-appellant.

HARBISON, C. J., and FONES, COOPER and DROWOTA, JJ., concur.