# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 10, 2005 Session

# THE WESTCHESTER COMPANY, LLC v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE

**Appeal from the Circuit Court for Davidson County**
**No. 03C-2002     Walter C. Kurtz, Judge**

---

**No. M2004-02391-COA-R3-CV - December 20, 2005**

---

This dispute arose after the Metropolitan Government of Nashville and Davidson County ("Metro") rezoned property owned by the plaintiff, The Westchester Company, LLC ("Westchester"), from multi-family to single-family. As a result of the zoning change, Westchester was unable to carry through with its contract to sell the property to a third party for the development of multi-family town houses. Westchester sought a declaratory judgment as to whether it had a vested right in the previous zoning classification by virtue of the fact (1) that it relied upon statements made by Metro employees regarding the then-existing zoning and Westchester's rights under that zone; (2) that the rezoning caused it to lose the profit it would have received under the contract; and (3) that it is potentially liable for breach of contract. As an alternative theory of recovery, Westchester argued that the zoning change amounted to an unconstitutional taking of its property. The trial court ruled in favor of Metro and dismissed Westchester's claims. Westchester appeals, but only as to the trial court's determination that it did not have a vested right in the previous zoning. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Richard M. Smith and Darren A. Olsen, Nashville, Tennessee, for the appellant, The Westchester Company, LLC.

Karl F. Dean, Director of Law, J. Brooks Fox and John L. Kennedy, Metropolitan Attorneys, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County, Tennessee.

**OPINION**

**I.**

The parties entered into a stipulation of facts, which provides as follows:

> On or about May 1, 2003, Westchester closed on the real property with improvements thereon located at 3110 Woodlawn Drive, Nashville, Davidson County, Tennessee for Three Hundred Sixteen Thousand Two Hundred and Twenty Five Dollars ($316, 225.00).
>
> When Westchester purchased the property, the property was zoned RM20.[1]
>
> Prior to closing on the property, representatives of Westchester met with representative of Metro in order to perform a good-faith investigation as it related to residential multi-use of the property zoned RM20.
>
> On two separate occasions, representatives of Westchester were advised by representatives of Metro that the property was properly zoned, that the property could be developed as residential multi-use property, and that no mistakes concerning the zoning of the property had been made by Metro.
>
> Based on these representations and other factors, Westchester purchased the property.
>
> On or about May 1, 2003, Dean Montgomery negotiated a contract for sale with Westchester for the property located at 3110 Woodlawn Drive, Nashville, Davidson County, Tennessee.
>
> The purchase price for the resale of the property was Five Hundred Twenty Five Thousand Dollars ($525,000.00).
>
> The terms of the contract for sale were negotiated based on the assumption that the Property would remain suitable for development in accordance with the then existing RM20 zoning.

---

[1]An "RM20" zone permits the development of residential single-family, duplex, and multi-family dwellings at a density of 20 dwelling units per acre.

After execution of the contract for sale, Westchester was notified of the proposed zoning change from RM20 to RS20.[2]

[Westchester] appeared and spoke in opposition to the zone change in question at the Planning Commission's meeting on this matter on June 26, 2003.

The minutes of that June 26th meeting explain that the property in question had been mistakenly rezoned to RM20 in 1998 and that the zone change legislation which is the subject of this lawsuit (BL2003-1480) was designed to correct that error and put the zoning classification back to RS20.

The Planning Commission unanimously approved this zoning correction.

The property's base zoning was accordingly changed from RM20 to RS20 by BL2003-1480 which passed third reading [by the Council of the Metropolitan Government of Nashville and Davidson County] on July 15, 2003.

At a meeting with counsel [sic] members, neighbors, and [M]etro representatives, it was apparent that the zoning change was made in order to prohibit the construction of town homes which were to be built in accordance with the RM20 zoning ordinance in place at the time of the execution of the contract for sale.

The change in zoning from RM20 to RS20 put the executed contract for sale between Westchester and Dean Montgomery in default. Westchester was unable to deliver the property in a manner that could be used as it was implicitly warranted under contract.

An Order granting Metro's motion for summary judgment and dismissing Westchester's claim for lost profits was entered by [the trial court] on May 4, 2004.[3]

(Numbering and citations in the original omitted) (paragraphs rearranged to maintain chronology).

---

[2] An "RS20" zone permits only single-family dwellings at a density of 1.85 dwelling units per acre.

[3] The parties filed competing motions for summary judgment during the course of the litigation. As alluded to in the stipulation, the trial court granted Metro's motion for summary judgment *in part* and dismissed Westchester's *claim for the recovery of its lost profits.* That decision was not appealed by Westchester.

The trial court held a hearing on Westchester's remaining claims against Metro. In addition to the stipulation of facts, Westchester presented brief testimony that essentially corroborated stipulated facts. The trial court ruled in favor of Metro on all of Westchester's remaining theories of recovery and dismissed its suit. The trial court made the following findings of fact and conclusions of law:

> The change of zoning from RM20 to RS20 does not destroy all beneficial use of the property. The only change in this property has been the normal sort of modification of the use that would occur in any zone change.
>
> The parties agree that there is no evidence of substantial construction having taken place in this case.
>
> There is also no evidence of any substantial liability directly related to construction. [Westchester] has put on proof that there are lost profits in excess of $200,000. Lost profits of any amount do not rise to the level of a vested right.
>
> [Westchester] could immediately sell this property, if [it] so desired, with no outright loss. There is nothing in the record to indicate that [Westchester] could not sell the property for at least the amount [it] purchased it for.
>
> There is no out-of-pocket loss by [Westchester] in this case.
>
> The possibility of a lawsuit from Mr. Montgomery to recover against [Westchester] is too contingent to constitute a vested right on behalf of [Westchester].
>
> The record reflects that Mr. Dean Montgomery was previously a party to this lawsuit but has been dismissed out.
>
> There is nothing in the record, and the parties agree, that this is not a case of improper spot zoning. The Metropolitan Planning Commission and the Metropolitan Council were within their rights and authority in re-zoning this property from RM20 to RS20.
>
> BASED UPON THESE FINDINGS OF FACT, THE COURT HEREBY MAKES THE FOLLOWING CONCLUSIONS OF LAW:
>
> There is no unconstitutional taking in this case.

The change of zoning from RM20 to RS20 does not destroy the beneficial use of the property.

[Westchester] did not attain vested rights in the then-current zoning regulations.

[Westchester] has not proved any claim for damages under any of the other theories set forth in the Complaint.

All claims and/or theories for damages in this case should be dismissed.

(Numbering and citations in original omitted). Westchester appeals, alleging that the trial court erred in determining that it did not have a vested right in the RM20 zoning.[4]

## II.

Westchester makes two basic arguments on this appeal. It places primary emphasis on the fact that, while the subject property was still zoned RM20, it sold the property, at a handsome profit, to one who intended to construct multi-family structures, a use permitted by the zone existing at the time of the sale. To a much lesser extent, Westchester argues that Metro is estopped to deny the use of the property for multi-family development based on conversations that an officer of Westchester had with employees of Metro prior to the sale. Both of these arguments are made in the context of Westchester's sole issue, which it states as follows:

> Whether the [trial court] erred by finding Westchester's rights did not vest in the continuity of the existing zoning.

## III.

In this non-jury case, involving the introduction of oral testimony,[5] our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations – one that we must honor unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). Our review of questions of law is *de novo* with no such presumption of correctness

---

[4] In its brief, Metro addresses the rationale and propriety of the trial court's decision dismissing Westchester's inverse condemnation claim. Since Westchester did not appeal this aspect of the trial court's judgment, this issue is not before us. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

[5] While the oral testimony essentially corroborates certain of the stipulated facts, its presence in the record mandates that we review this record under the purview of Tenn. R. App. P. 13(d). Needless to say, in this 13(d) review, we treat the facts which are the subject of the stipulation as undisputed.

attaching to the trial court's conclusions of law. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996).

IV.

We first address whether the trial court erred in failing to conclude that Westchester had a vested right in and to the RM20 zone by virtue of its contract with Montgomery and its potential liability under that contract. The concept of a vested right in a zoning, which has long been recognized in Tennessee, allows property owners, who have acquired the requisite "vested" interest under an existing zone, to use and develop the property pursuant to said zone even if a subsequent zoning ordinance is enacted. *See **State ex rel. SCA Chem. Waste Servs., Inc. v. Konigsberg***, 636 S.W.2d 430, 437 (Tenn. 1982); 101A C.J.S. *Zoning and Land Planning* § 71 (2005). The question of whether one's loss of a contract and/or that entity's potential contract liability is sufficient to create a vested right in a zoning classification has not been specifically addressed in Tennessee; but it is clear that neither circumstance fits within the general definition of what is required for vesting. "It is well settled that rights under an existing ordinance do not vest until *substantial construction or substantial liabilities are incurred relating directly to construction.*" ***State ex rel. SCA Chem. Waste Servs., Inc.***, 636 S.W.2d at 437 (emphasis added). In the case now pending, it is undisputed that construction of the town houses had not commenced prior to the zoning change; thus, the first prong – the "substantial construction" test – does not apply. Having conceded that point, Westchester specifically asks this Court to determine whether the trial court erred in its application of the second part of the rule – the "substantial liabilities" prong.

Westchester contends that its lost profits and/or its possibility of being sued for breach of contract amount to "substantial liabilities . . . relating directly to construction." We disagree. The plain language of the "substantial liabilities" concept contradicts such a conclusion. It is clear that the liability incurred must be, literally, directly related to *construction. See **Pep Props. v. Town of Farragut***, 1991 WL 50211, at *2 (Tenn. Ct. App. E.S., filed April 10, 1991), *perm. app. denied*, September 9, 1991 (holding that $13,000.00 in "preliminary expenses" did not qualify as "'substantial liabilities' within the purview of the requirement"). Westchester's lost profits and potential liability on the contract to sell the property are not liabilities incurred in relation to *construction*. They are more appropriately labeled as losses/liabilities incurred in relation to the holding of investment property. In the instant case, construction had not commenced; Westchester had not entered into contracts *related to the construction* of the town houses; and it had not sustained any losses related to construction. We are not aware of any Tennessee case recognizing a vested right in zoning continuity where there is no construction or expenditures/liabilities related to construction. We see no justification for the expansion of the well-defined concept of the activities required to permit the vesting of rights in a zoning classification. The purchase of property does not carry with it a guarantee that the zoning will not be changed. On the contrary, the zoning of all property is subject to change for legally-valid reasons. The effectiveness of a legally-valid zoning change can only be thwarted by a finding of a vested right in the previous zone, a right that simply does not exist in this case.

V.

Westchester also suggests that its good faith reliance on certain representations made by Metro employees establishes its vested right in the RM20 zone. In other words, Westchester argues that Metro is estopped to deny it the right to use its property for multi-family development because of Westchester's reliance on representations made by Metro employees. It was stipulated that, prior to entering into the contract to sell the property to Montgomery, Westchester was advised by Metro employees "that the property was properly zoned, that the property could be developed as residential multi-use property, and that no mistakes concerning the zoning of the property had been made by Metro." While we accept all of this as true, these facts do not establish a vested right in the RM20 zone. In *Corlew's Auto Salvage, Inc. v. Murfreesboro Bd. of Zoning Appeals*, 1989 WL 54913, at *7 (Tenn. Ct. App. M.S., filed May 24, 1989), this Court, in rejecting a similar estoppel argument under the vested rights rubric, stated that "[e]ven though the [*SCA Chemical*] opinion may contain some comfort to one who expends money or contracts liability under an existing ordinance, *it does not recognize estoppel in favor of one who expends money or creates liability in reliance upon oral statements of administrative officials*." **Id.** (emphasis added). It is clear that estoppel does not generally apply to the acts or statements of public agents. *State ex rel. Moulton v. Williams*, 343 S.W.2d 857, 861 (Tenn. 1961); *Haymon v. City of Chattanooga*, 513 S.W.2d 185, 189 (Tenn. Ct. App. 1973). Though exceptions to this general rule exist, *see City of Lebanon v. Baird*, 756 S.W.2d 236, 242, 244 (Tenn. 1988), we know of no authority supporting an exception under the current facts. Westchester's estoppel argument is without merit.

VI.

The judgment of the trial court is affirmed. This matter is remanded to the trial court for collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellant, the Westchester Company, LLC.

_____
CHARLES D. SUSANO, JR., JUDGE