In the Matter of WILLIAM J. SLOANE et al., Composing the Firm of SLOANE, MOLLER & KRAUS, Respondents, against WILLIAM E. WALSH et al., Constituting the Board of Standards and Appeals, Defendants, and WALTON-WHYTE REALTY Co., INC., Appellant.

New York city — building zones — resolution of Board of Standards and Appeals granting application for variation — resolution constitutes decision of Board — may not be disputed by evidence of oral statements of members of Board — certiorari to review action of Board properly dismissed.

A resolution of the Board of Standards and Appeals of the city of New York which recites with sufficient clearness that petitioner made "application on the theory of hardship" for a variation from the requirements of the Building Zone Resolution so as to permit it to erect a garage in a business district, and that the Board resolved "that the application be and it hereby is granted," cannot be affected by showing that those who passed it did not in fact approve it, or were induced to concur therein for reasons which were not tenable. The resolution constituted the action of the Board (N. Y. Charter, § 719, subd. 5) and that action cannot be disputed by reference to oral statements made by those who concurred therein. This court may look only to the resolution and where, on so looking, it is found that the Board exercised the powers conferred upon it and legally varied the zoning resolution in petitioner's favor, it must be held that an order of certiorari to review the action of the Board was properly dismissed.

*Matter of Sloane* v. *Walsh*, 217 App. Div. 614, reversed.

(Argued April 7, 1927; decided May 10, 1927.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 24, 1926, which reversed an order of Special Term dismissing a writ of certiorari, sustained said writ and vacated and set aside a determination of the Board of Standards and Appeals of the city of New York granting the application of the appellant herein for permission to erect a garage.

*Harold R. Medina, John Kadel* and *William F. Mc-Nulty* for appellant.  The reversal was predicated upon an improper interpretation of section 21 and upon an erroneous understanding of the grounds upon which the Board of Standards and Appeals granted the application.  In determining the application on the grounds that it did the Board was properly exercising the discretion conferred upon it by the Building Zone Resolution. (*People ex rel. Sheldon* v. *Board of Appeals,* 234 N. Y. 484; *People ex rel. Smith* v. *Walsh,* 211 App. Div. 205; *Smith* v. *Walsh,* 240 N. Y. 606; *People ex rel. Facey* v. *Leo,* 110 Misc. Rep. 516; 193 App. Div. 910; 230 N. Y. 602; *People ex rel. McAvoy* v. *Leo,* 109 Misc. Rep. 255.) In the absence of a positive showing that the Board of Standards and Appeals manifestly abused or arbitrarily exercised the discretion delegated to it, its determination must be sustained and the order of the Appellate Division reversed.  (*People ex rel. N. Y. & Queens Gas Co.* v. *McCall,* 219 N. Y. 84; *People ex rel. Smith* v. *Walsh,* 211 App. Div. 205; 240 N. Y. 606; *People ex rel. Werner* v. *Walsh,* 212 App. Div. 635; 240 N. Y. 689; *Matter of Goldenberg* v. *Walsh,* 215 App. Div. 396; 242 N. Y. 576.)

*William Burr De Lacy* and *Bertram L. Kraus* for respondents.  The Board did not grant intervenor's application under section 21.  The action of the Board in granting the application under an attempted fusion of sections 7-g and 21 was highly improper and a gross abuse of discretion.  (*People ex rel. Werner* v. *Walsh,* 212 App. Div. 635; 240 N. Y. 689.)

KELLOGG, J.  The Walton-Whyte Realty Co., Inc., the intervenor, appellant, is the owner of a vacant lot on the east side of Jerome avenue, in the city of New York, 350 feet south of the intersection of that avenue with East One Hundred and Eighty-first street.

Both streets are in a business district. The company applied to the Superintendent of Buildings, having jurisdiction, for a permit to erect and maintain on such lot a garage for the storage of more than five motor vehicles. The application was denied on the ground that the erection of such a garage in a business district was prohibited by the zoning resolution in force. (See art. II, section 4, subd. 15 of Amended Building Zone Resolution, adopted October 3, 1924.) Thereafter, the company made application to the Board of Standards and Appeals for a variation from the requirements of the resolution, under section 7 (g) and section 21 thereof, and for a permit to erect a garage in accordance with plans previously filed. The Board fixed the area which it deemed to be affected by the application and within which consents of owners of 80% of street frontage, under section 7 (g), might be filed. Thereafter, the appellant filed consents which on their face appeared to be the consents of the owners of 80% of all frontage affected. After various hearings the Board granted the application. Thereafter, the plaintiffs, certain owners of street frontage within the affected district, sued out an order of certiorari to review the action of the Board. The order was dismissed at a Special Term of the Supreme Court. Subsequently the Appellate Division, upon an appeal to it, reversed the order so made, sustained the order of certiorari, and vacated the determination of the Board of Standards and Appeals which had granted the application for a variation of the resolution and for a permit to erect the garage in question.

The resolution adopted by the Board read in part as follows: " WHEREAS, the applicant, having complied with specific rules and regulations as laid down by the Zoning Regulations under rules of exceptions affecting an application under Section 7 (g) and in support of this application on the theory of hardship, Section 21 (being the fee owner of the property), irrespective of the subsequent

withdrawal of consents after the presentation of the appeal, Resolved, that the Board of Standards and Appeals does hereby make a variation in the application of the use district regulations of the Building Zone Resolution, and that the application be and it hereby is granted."

Section 7 (g) of the Building Zone Resolution provides that the Board of Appeals may in appropriate cases, after hearings duly had, vary the application " of the use district regulations " as follows: " (g) Permit in a business or residence district the erection of a garage provided the petitioner files the consents duly acknowledged of the owners of 80 per cent of the frontage deemed by the Board to be immediately affected by the proposed garage." It is conceded that at the first hearing before the Board there were on file written consents signed by persons who at the time of signing were the owners of 80% of the frontage affected. The point was made that one of the owners so signing had parted with his title prior to the filing of the consents. The evidence upon that point is not satisfactory. An officer of a corporation which was one of the consenting owners filed an affidavit in which he stated that " to the best of my knowledge and belief " the consent of the corporation was filed " subsequent to the time of the sale of said premises." However, neither the date of the filing, nor the date of the sale, was given in evidence. Counsel for one of the objectors was asked: " You admit that the applicant has filed 80% consents? " and he replied: " There was, but some of the consents were withdrawn." It is conceded that a number of consents were subsequently withdrawn so that, at the time when the Board passed the resolution, there were on file consents of the owners of but 68% of the frontage. The appellant nevertheless contends that its original filing of consents of those owning 80% of the frontage was sufficient under section 7 (g); that the case was one where the petitioner had complied with

the condition expressed in the section, viz., " provided the petitioner *files* the consents " of the owners of the necessary frontage; that this is especially true since the Board had proceeded to act upon the consents filed by hearing the case of the parties; that the Board, having taken jurisdiction of the subject-matter, could not have lost jurisdiction through the subsequent withdrawal of consents.   There may be force in the argument.   However, as it is based upon the premise that there were on file, at the date of the first hearing, the consents of those *then* owning 80% of the frontage, and that premise has not been clearly established, we refrain from expressing our views upon the question, preferring to rest our decision upon another ground.

The resolution adopted by the Board is somewhat crudely expressed.   Nevertheless, it appears with sufficient clearness that a recital is therein made of the fact that the petitioner made " application on the theory of hardship," under section 21, " irrespective of the subsequent withdrawal of consents after the presentation of the appeal."   The Board resolved " that the application be and it hereby is granted."   Thus, on the face of the resolution, it clearly appears that the Board intended to execute the power .vested in it by section 21.   That section, in part, provides as follows:   " Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this resolution the Board of Appeals shall have power in a specific case to vary any such provision in harmony with its general purpose and intent, so that the public health, safety and general welfare may be secured and substantial justice done."   It sufficiently appears that the case was one where there may have been " practical difficulties " and " unnecessary hardships " in carrying out the zoning resolution in its strict letter, so that the Board, in its discretion, exercising the power conferred by section 21, might well have concluded to vary the resolution and grant

1927.]            Opinion, per Kellogg, J.            [245 N. Y. 208]

the application. That it was such a case is hardly in dispute. The point that the respondents press is that the Board, as shown by the statements made by some of those voting for the resolution, expressed concurrently with its passage, did not in fact determine that there were " hardships " presented so that under section 21 the application should be granted. That was the point made by the Appellate Division in reversing the action of the Board of Appeals. We do not think the point well taken. The Greater New York charter, in section 719, subdivision 5, thereof, provides, in relation to decisions by the Board of Standards and Appeals, as follows: " The decision shall be in writing and shall be filed in the office of the board and promptly published in the bulletin of the board." The resolution of the Board, concededly passed, was, therefore, not merely the written evidence of the action of the Board. It was in itself the action and decision of the Board. Professor Thayer says: "Another discrimination to be observed is that between documents which constitute a contract, fact, or transaction, and those which merely certify and evidence something outside of themselves,— a something valid and operative, independent of the writing." (Preliminary Treatise on Evidence, p. 393.) Professor Wigmore says: " Where by law an act is *required to be done in writing,* *i. e.* is ineffective unless so done, the writing is of course the only permissible subject of proof. It is immaterial what the person intended; his act must be in the writing and must be judged by the writing alone." (Wigmore on Evidence, section 2427.) Again, in the same section, he says: " In general, then, where an official writing represents the act itself of the officer, it is an instance of the present principle of integration." Again, in section 2478, he says: "A statute is an act of expression by a legislative body; and, as a legal act, it presents the same problems as to intention, integration, form, and interpretation, as other legal acts." Dillon says: " It is well

settled that the judicial branch of the government cannot institute an inquiry into the motives of the legislative department in the enactment of laws." (Municipal Corporations, section 580.) This court, in *People ex rel. Bolton* v. *Albertson* (55 N. Y. 50 at p. 54) said: "Every intendment is in favor of the validity of statutes; and no motive, purpose or intent can be imputed to the Legislature, in the enactment of a law, other than such as are apparent upon the face, and to be gathered from the terms of the law itself." This court has expressed itself similarly in reference to ordinances or resolutions adopted by the legislative boards of municipalities. (*Kittinger* v. *Buffalo Traction Co.*, 160 N. Y. 377.) It is not questioned that the resolution under consideration was adopted by the Board of Standards and Appeals. Nor is it seriously questioned that the resolution on its face grants an application made under section 21. The respondents merely question the mental concurrence therein of members of the Board who in fact voted yes when the resolution was on passage. They seek to destroy the effect of the resolution by showing that those who passed it did not in fact approve it, or were induced to concur therein for reasons which were not tenable. The resolution constituted the action of the Board. That action cannot be disputed by a reference to the oral statements made by those who concurred therein. We can look only to the resolution, and, so looking, we find that the Board exercised the powers conferred upon it by section 21, and legally varied the zoning resolution, in petitioner's favor.

The order of the Appellate Division should be reversed and the order of the Special Term, dismissing the order of certiorari, should be affirmed, with costs in this court and in the Appellate Division.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS and LEHMAN, JJ., concur; O'BRIEN, J., not sitting.

Ordered accordingly.