CHRISTIAN LOOS, Plaintiff, *v.* THE CITY OF NEW YORK and Others and NORTH SHORE BUS CO., INC., Defendants.*

Supreme Court, Special Term, Queens County, January 18, 1939.

*Chamberlain, Clark, Buchner & Willi [Lloyd Paul Stryker, John Holley Clark, Jr., Herbert Stern* and *Raymond C. Murphy* of counsel], for the plaintiff.

*William C. Chanler, Corporation Counsel [Herman Horowitz, Robert W. Lishman* and *William Mason Smith, Jr.,* of counsel], for the defendants other than the North Shore Bus Co., Inc.

*Jacob I. Goodstein [Jacob I. Goodstein, Isidore Zamore* and *Benjamin William Mehlman* of counsel], for the defendant North Shore Bus Co., Inc.

* See, also, 170 Misc. 14.

*Jackson, Fuller, Nash & Brophy,* for the New York World-Telegram, Inc., *amicus curiæ.*

*Guggenheimer & Untermyer,* for the New York Post, Inc., *amicus curiæ.*

KADIEN, J. This taxpayer's action seeks to invalidate the grant by the board of estimate of a terminable permit or franchise to operate buses in the so-called Zone D district in Queens county.

Although the voluminous complaint has gone far afield in its attack upon the action of the board and some of its individual members, counsel for the plaintiff has in his opening statement confined his charges solely to the claim that the conditions precedent to the grant, as required by chapter 14 of the present New York City Charter, have not been substantially complied with in several respects. He urges that failure to comply in any one respect is sufficient to invalidate.

The city, through its assistant corporation counsel, contends that even if the plaintiff could *arguendo* establish that any of the conditions precedent required by the statute have not in fact been complied with, plaintiff nevertheless cannot establish such non-compliance in the face of recitals to the contrary in the official records of the board of estimate. He has urged, in the memoranda submitted prior to. and at the opening of the trial, that the court should rule on this question early in the case, as that issue will reoccur in the course of the trial, and that a ruling might shorten considerably the length of the trial.

The rule invoked by the city is stated in 2 McQuillan on Municipal Corporations ([2d ed.] § 653) as follows: " Accordingly, to repeat, where the law requires public records of proceedings to be kept such records cannot be contradicted, added to, or supplemented by parol evidence." Its application is vigorously urged here because it is claimed that this is the first time since the new city charter went into effect on January 1, 1938, that the official records of the board of estimate have been sought to be impeached.

Under subdivision a of section 64 of the new charter, the secretary of the board of estimate is required to " keep a journal of the meetings of the board which shall be a public record and which shall contain a record of ayes and noes on all votes taken on any resolution or other action of the board, the text of any resolution as passed by the board, a record of any other action taken by the board in such form as may be required by the board and such other matters as may be required by the board." And under subdivision b of said section a full stenographic record of all public meetings of the board is required to be filed in the office of the secretary, as

a public record, and a transcript thereof or of any part thereof promptly furnished to any taxpayer on demand within ninety days after the meeting on payment of reasonable fees, etc.

No such provisions were contained in the old city charter. While a journal may have been kept, there was no statutory requirement that it be kept.

Therefore, the corporation counsel urges: " It is of the utmost importance, * * * that this Court rule that the Board's Journal may not be collaterally attacked; " that " the records of a municipal body not immune from attack " might have disastrous consequences.

" 1. The board of estimate adopts hundreds of resolutions and grants numerous franchises annually. If each of these acts may be questioned by examining in court the members of the Board, it is apparent that the City's business would be disrupted.

" 2. Official records and resolutions would become dangerously uncertain and it would be unsafe to rely on them.

" 3. Needless litigation would be encouraged."

The city asserts that " all of the acts of the Board, the validity of which is attacked by the plaintiff, are duly recorded in the Board's Journal of Proceedings, kept pursuant to the foregoing charter provision."

If that is so, and the court makes its ruling upholding the principles contended for by the city, the recording, in the journal, of the acts which were required to be done precedent to the granting of the permit to the defendant North Shore Bus Co., Inc., will be conclusive, and the plaintiff will necessarily be precluded from adducing evidence showing or tending to show that the acts of the board thus recorded in its journal, were not in fact done.

In the brief submitted by the plaintiff on this question learned counsel contend:

(a) That the authorities do not uphold the principle urged by the city;

(b) That the position of the corporation counsel of the present administration, on the question, in *Greenberg* v. *City of New York* (152 Misc. 488) was contrary to that which he takes in the instant case;

(c) That the learned justice who tried the *Greenberg* case adopted the corporation counsel's then position on the question;

(d) That section 64 of the New York City Charter does not change the law with respect to the journal of the board as a public record, because under section 51 of the General Municipal Law such a journal has always been a public record; and

(e) That *Blanshard* v. *City of New York* (262 N. Y. 12) refutes the city's present contention.

It is unnecessary, in my opinion, here to pass upon the applicability of the rule to all of the acts or functions of the board of estimate which are recorded in its official records as required by section 64 of the New York City Charter.

Concededly, what is involved here is a delegated *legislative* act, and admittedly the board of estimate was the proper body to exercise it.

Plaintiff's complaint is merely that it omitted certain steps in the exercise of that delegated legislative act.

Not all of the board's action is legislative, but in so far as its acts are legislative, and, therefore, impressed with the character of sovereignty, I am of the opinion that the rule urged by the corporation counsel is applicable in the instant case, and the court will not receive any evidence to vary, contradict or otherwise impeach the facts recited in the board's official journal with respect to the legislative grant herein involved.

It was said by POTTER, J., writing for the court in *People* v. *Devlin* (33 N. Y. 268, at p. 281): " It would be destructive not only of all public confidence, but would open a wide door for litigation, if our statutes, published by public authority, were liable to be annulled or impeached by issues of fact, to be raised either of fraud in procuring their passage, or in lack of conformity to *rule* by either house in the usual forms of enactment."

In *Kittinger* v. *Buffalo Traction Co.* (160 N. Y. 377, 388, 389) we find the following expression by quotation from *People ex rel. Wood* v. *Draper* (15 id. 532, 545): " There is room for much bad legislation and misgovernment within the pale of the Constitution; but whenever this happens, the remedy which the Constitution provides, by the opportunity for frequent renewals of the legislative bodies, is far more efficacious than any which can be afforded by the judiciary. The courts cannot impute to the Legislature any other than public motives for their acts. If a given act of legislation is not forbidden by express words, or by necessary implication, the judges cannot listen to a suggestion that the professed motives for passing it are not the real ones."

In *People ex rel. Burr* v. *Zeyst* (23 N. Y. 140) the court, in referring to a Massachusetts case (*Taylor* v. *Henry*, 2 Pick. 397), where parol evidence was held inadmissible to furnish an omission in the minutes, stated (at p. 144): " In that case, it will be observed that it was held to be incompetent to supply an omission in the minutes. *Much greater reason exists against the introduction of proof to contradict them.*" (Italics mine.)

This rule finds support in the most recent expression of our Court of Appeals on the subject in *Matter of Sloane* v. *Walsh* (245 N. Y. 208), where the court said (at p. 214): "The resolution constituted the action of the Board. That action cannot be disputed by a reference to the oral statements made by those who concurred therein. We can look only to the resolution, and, so looking, we find that the Board exercised the powers conferred upon it by section 21, and legally varied the zoning resolution, in petitioner's favor."

Even in the *Greenberg* case (*supra*), in which the plaintiff contends the Special Term upheld the corporation counsel's *then* position, the learned justice stated (at p. 516): "Lastly, in law the court may not go behind the official records of the board of estimate certifying that the commissioner of public works in the place of the borough president of Richmond voted for the Comprehensive franchise." The court then referred to *People* v. *Devlin* (*supra*) as holding that "where the journals did show that the bill was passed by a certain vote the court could not receive parol evidence to show that this record was untrue."

In *People ex rel. Durham Realty Corp.* v. *La Fetra* (195 App. Div. 280; affd., 230 N. Y. 429) the court said (at p. 286): "The official journals may be consulted in support of a statute, but we are of the opinion that in no event could parol evidence be received to impeach the official certification by the presiding officers or the journals of the respective houses, for that is not permitted even in jurisdictions where recourse may be had to the official journals." (Citing cases.)

In 98 A. L. R. (p. 1239) there is the statement: "The rule excluding parol or extrinsic evidence for the purpose of showing a different fact from that recorded as proceedings of a local legislative body applies for the same reasons and with equal force to attempts at contradiction by showing absence of a fact as recorded, which has the practical effect of destroying whatever truth the record imports.'" And (at p. 1243): "The policy of the law is to maintain the dependability of public records, both as to substance and manner of recording, while securing as far as possible both private and public rights which have become fixed."

Perhaps the plaintiff's remedy on its complaints, if true, might be by direct proceeding against the board of estimate to correct its records; but on reason and authority the plaintiff cannot in the instant action, impeach the acts of the board of estimate as recorded in its journal.

The objection of the respective defendants is consequently sustained, with an appropriate exception to plaintiff.