DECISION
This is an appeal from a decision of the Zoning Board of Review of the Town of New Shoreham "the Board"). The plaintiff, Island Restoration Associates, Inc. ("Island Restoration"), is appealing the Board's June 4, 1996 written decision imposing certain conditions on Island Restoration's grant of a parking variance. Jurisdiction in this Court is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
Island Restoration owns real property located at 456 Chapel Street in New Shoreham, Rhode Island ("the property"). See
Application for Variance, dated March 15, 1996. The property is designated as Assessor's Lot 111 on Plat 6 and is located in an Old Harbor Commercial ("OHC") zone within historic overlay boundaries Id.; see also Town of New Shoreham Zoning Ordinance, §§ 311, 317.
The property is comprised of multiple buildings which serve various uses. The existing uses include moped storage, retail, restaurant, dwelling units, and a walk-in cooler. See Application, Appendix A-4. The restaurant, named "Eli's Restaurant" (Eli's"), is owned and operated by David Silverberg ("Silverberg"). For many years, Eli's was located in a building on Island Restoration's property designated as Fire # 457 and had a capacity of 26 seats. Island Restoration and Silverberg proposed to move Eli's from Fire # 457 to another building designated as Fire # 456, also known as the Dodge House, in order to increase Eli's seating capacity to 42 seats. On or about March 15, 1996, Island Restoration as "owner" and Silverberg as "applicant" (collectively referred to as "Island Restoration" or "the applicant") applied to the Board for a variance to move Eli's to the Dodge House and to expand the dimensionally nonconforming restaurant pursuant to § 113 (C) of the New Shoreham ordinance. (Tr. at 4); see also § 113 (C).
Section 502 (A) — "Off-Street Parking/Sidewalks" of the New Shoreham ordinance provides: ". . . where several uses occupy a single structure or lot, the total required parking shall be the sum of requirements of the individual uses." § 502 (A). In accordance with § 502 (A), and to accommodate Island Restoration's application for the expansion and relocation of the permitted restaurant, fourteen on-site parking spaces were required at the property. With the proposed increase in Eli's seating capacity, another parking space had to be designated for handicapped parking. (Tr. at 5.) The loss of existing spaces to both handicapped parking and to the relocation of Eli's walk-in cooler left only eleven parking spaces. (Tr. at 7-8.) Consequently, in its application, Island Restoration also sought a variance from § 502 (A) for three parking spaces.
On May 20, 1996, the Board held an advertised, public hearing to consider Island Restoration's application. Silverberg and Alton Davis ("Davis") appeared on behalf of the applicant. Island Restoration submitted a site plan to the Board which was marked as Applicant's Exhibit 1, Site Plan and Details, entitled, "Eli's Restaurant Relocation" Block Island, Rhode Island by AOD Architectural Planning and Design dated March 6, 1996. (Tr. at 3-4.) The site plan showed only ten parking spaces. Davis informed the Board that the eleventh parking space could not be indicated on the plan because it was enclosed within the moped storage area. Although the application referenced the enclosed parking space, Donald Packer ("Packer"), the Town Solicitor, instructed Davis to mark the site plan so that it also reflected the eleventh space. (Tr.at 9-l0, 12.)
At the May 20 hearing, the Board inquired as to the proposed use of the existing restaurant building, Fire # 457, once Eli's moved out. Silverberg informed the Board that he had no idea what type of use would occupy Fire # 457. The conversation which ensued as to that matter provides the first basis for the applicant's appeal. Silverberg further testified that ninety percent of his customers arrive on foot rather than by car so parking has never been a problem; and, of the thirty-three abutters that were notified, not one objected to his application. (Tr. at 8-9, 12.)
Davis addressed the Board concerning the construction of a brick sidewalk along the property, an issue which provides the second basis for Island Restoration's appeal. David stated that Island Restoration "submitted details and a proposal to the Town Manager to put a brick sidewalk in there per the town's own specifications . . . to put brick sidewalks in front of the whole property to match the brick that's in the courtyard. . . ." (Tr. at 15-16.)
Packer stated that the site plan submitted by Island Restoration showed a walk, so that if the Board approved the application and tied it to the site plan, the applicant would be required to put in the walk. Packer further indicated that unless the applicant constructed the walk that was shown on the site plan or obtained relief from the Board, it would not be issued an occupancy permit by the Building Official. (Tr. at 17.)
The Building Official, Marc Tillson ("Tillson") was present at the meeting. Tillson attested to the fact that the site plan presented to him by Island Restoration showed a sidewalk that extended from the subject property onto Chapel Street, which is town property. Tillson stated that when he issued the building permit, he did not approve the sidewalk because it was on town property. He further stated that he informed Island Restoration of the need to return to the Department of Public Works and obtain approval for the sidewalk. Tillson indicated that the applicant did, thereafter, receive approval to construct the sidewalk partially across Chapel Street. (Tr. at 18.) The chairperson of the Board, John Spier ("Spier") responded: "Yeah, the town is not an applicant here so we certainly can't require that the town construct a sidewalk on this property." (Tr. at 18.)
The Board then invited the audience to speak in favor of or in opposition to Island Restoration's petition. A local innkeeper testified that Silverberg's restaurant provided a valuable service because during the winter months there are no other places at which the inn guests can eat. (Tr. at 14.) That opinion was mirrored by a local manager of Block Island Resorts. (Tr. at 19.) No one spoke in opposition to the Island Restoration's application.
Thereafter, the Board closed the public hearing. (Tr. at 20.) Later that same night, the Board rendered its decision. A Board member moved to approve the request for the variance for three parking places "with the requirement that a sidewalk be placed in along the front perimeter from the driveway to the edge of theproperty line as noted on the site plan as submitted; . . . that the restaurant be in the existing building Fire Number 436 [sic], and that this plan is based on existing building Fire Number 457using the retail space only." (Oral Decision, Tr. at 2.) (Emphasis added.) Packer suggested amending the motion to require that Island Restoration install and maintain the sidewalk. The Board accepted Packer's suggestion. Thereafter, the amended motion was approved. (Oral Decision, Tr. at 2-3.)
In its written decision, dated June 4, 1996, the Board stated in part:
 "DECISION LETTER
 At its May 20, 1996 Zoning Board of Review meeting, the Board voted 4-1 to approve your request for a Variance for expansion of a nonconforming building and relief from parking requirements, with the following stipulations: . . .
 B. the applicant shall install and maintain a sidewalk along the front of the property, as shown on the site plan submitted at the public hearing, . . .
 F. the building with Fire # 457, now used as a restaurant, is to be used as retail space as identified in the application and for which the parking was calculated;. . . ." (Emphasis added.)
Island Restoration filed the instant appeal arguing that the Board's June 4, 1996 written decision does not accurately reflect the Board's oral decision rendered at the May 20, 1996 meeting. Specifically, Island Restoration claims that the written decision imposes two arbitrary conditions on the Board's grant of relief, neither of which was approved at the May 20th meeting. The applicant alleges that one condition arbitrarily restricts the use of its property by requiring it to use Fire # 457 for retail use only. The applicant further alleges that the other condition, which causes Island Restoration to incur great expense, arbitrarily forces the applicant to construct a sidewalk across town property.
In addition to filing its appeal in this Court, Island Restoration also sought a stay of the two aforementioned conditions. A hearing was held before a Justice of the Superior Court, and on June 10, 1996, an Order was entered granting the stay as to paragraphs "B" and "F" of the June 4, 1996 written decision.
 STANDARD OF REVIEW
The Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69 (D), which provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount, more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co. Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d 824-825). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n, Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521
(1977)).
 Dimensional Variance
The Board's power to grant a variance emanates from §45-24-57, which provides: "A zoning ordinance adopted pursuant to this chapter shall provide that the zoning board of review shall: (A) Have the following powers and duties: . . . (4) To authorize, upon application, in specific cases of hardship, variances in the application of the terms of the zoning ordinance, pursuant to § 45-24-41. . . ." In accordance with § 45-24-41, the Town of New Shoreham enacted § 706 of the New Shoreham ordinance. Section 706 (C)(4)(d) and § 706 (E)(2), which mirror G.L. 1956 § 45-24-41, provide:
"Section 706 — Variance . . .
C. Procedures: Review of an application for a Variance shall be conducted by the Zoning Board of Review shall act upon all applications for a Variance in accordance with the following: . . .
4. Review and Disposition: The Zoning Board of Review shall act upon all applications for a Variance in accordance with the following: . . .
 (d) Standards: A Variance shall be granted only if evidence of the following standards are entered into the record of the proceedings:
 (1) The hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 (2) The hardship sought to be avoided is not the result of any prior action by the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) The granting of the requested Variance will not alter the general character of the surrounding area or impair the intent or purpose of the Zoning Ordinance or the Comprehensive Plan upon which the Ordinance is based; and
 (4) That the Variance granted is the least relief necessary to remove the hardship to the applicant."
 "E. Additional Standards: In addition to the above standards, the Zoning Board of Review shall require that evidence be entered into the record of the proceedings showing that: . . .
 2. In granting a Dimensional Variance, that the hardship that will be suffered by the owner of the subject property if the Dimensional Variance is not granted shall amount to more than a mere convenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of the property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."
Island Restoration's request for a dimensional variance was granted without opposition and is not the subject of this appeal.
 Use of Fire Number 457 as "Retail Only"
Island Restoration attacks the Board's written decision on the grounds that it imposes two arbitrary conditions on its grant of the variance and does not accurately reflect the Board's May 20, 1996 oral decision. The first condition concerns the use of Fire # 457 (the building where Eli's was originally located). In its written decision, the Board granted Island Restoration's application for a variance with the stipulation that Fire # 457 be used as retail space. See June 4, 1996 Decision, Para. F. The applicant alleges that the condition purports to preclude it from ever using Fire # 457 as a restaurant or food service again in violation of both the United States and Rhode Island Constitutions. Island Restoration alleges that the Board's decision is tantamount to an amendment of the New Shoreham ordinance. This Court disagrees. The following interchange regarding the retail use occurred at the May 20, 1996 hearing:
 "MR. SPIER: What is the applicant's proposal for the existing building, Fire Number 457, which you are moving out of'?
 MR. SILVERBERG: I can't even begin to answer that.
 MR. SPIER: On the application, which you filed and signed, I believe that it has an accompanying document . . . `See Attached Literature' which is referenced on your application . . . It says in part, `It should be noted that we are not increasing the number of tenants already on the site for this application, but in fact only moving the restaurant to the Dodge House and retail to the former Eli's building.' So, I would take that to mean that they're moving retail from Fire Number 456 to Fire Number 457. (Emphasis added.)
 MR. DAVIS: No, let me —
 MR. SPIER: That's what it says here.
 MR. DAVIS: I know. I realize that, but that place is not rented yet. I don't know whether retail is going in there or what's going in Eli's because we don't know.
 MR. SPIER: That would make a difference in the parking requirements.
 MR. PACKER: What's the parking based on?
 MR. DAVIS: The parking is based on it being retail.
 MR. SPIER: But, if it became, say, a restaurant, then it would need more than one parking space.
 MR. DAVIS: They would need two. We'd need one more, and we would have to come back to get a variance for one more parking space.
 MR. SPIER: They would.
 MR. DAVIS: They would, that's correct."
(Tr. at 5-6.)
Later in the hearing, the issue of Fire # 457's use arose again:
 "MR. DAVIS: . . . Also, in terms of limiting the other building to not being a restaurant, I don't see a problem with that, but I don't think it's fair to limit it to him not having food service. What if somebody wants to put a yogurt shop or something in there? That's a little unfair, I think.
 MR. SCOTT: Well, if we approve this parking anyway if they came back and wanted to change their use you would flag it, Mark, right?
 MR. TILLSON: If the changes required additional parking or increase in occupancy, yes.
 MR. SCOTT: So, it doesn't matter what they do with it as long as it fits in with the parking that we approve tonight?
 MR. DAVIS: Right, but I mean, I'm just saying I don't think it's fair to say that we can't put food service in there. I think it's better to say that we have to come back.
 MR. SPIER: No, what we would say is that any use which required more parking would require a resubmittal to the Zoning Board.
 MR. DAVIS: That's right.
 MR. PACKER: Yeah, Mark's calculated the parking on that space being retail so if they put something in there that requires more parking they won't be able to get an occupancy permit. . . ."
(Tr. at 16-17.)
The decision clearly does not place restrictions on the future use of the property, it simply places conditions on the present grant of a parking variance. The decision will have no effect on Fire # 457's use if Island Restoration ever decides to change it. The applicant would simply be required to apply for another parking variance should the sum of its uses' on-site parking requirements not comply with § 502 (A).
Island Restoration further claims that it was not committing, as part of its application, that Fire # 457 would only be used for retail purposes. (Emphasis added.) This argument is unavailing. The Rhode Island Supreme Court has held that a zoning board's jurisdiction is limited to the scope of the applications before it. See Allen v. Zoning Board of Review of the City ofWarwick, 75 R.I. 321, 66 A.2d 369 (1949). In granting the petitioner's application, the Board, like that in Gardiner v.Zoning Bard of Review of the City of Warwick, 101 R.I. 681, 688,226 A.2d 698, 702 (1967), "of necessary incorporated the application and the plot plan in its decision."
In Allen, the petitioner applied for an exception or variance from zoning requirements to erect a "washing plant" on property allegedly used for "gravel operations." The Board, however, proceeded far beyond the scope of the narrow issue before it. It recognized that a "washing plant" is only part of a gravel pit operation. In her testimony, the petitioner stated she had intended to ask for relief to carry on a full gravel pit operation and that, at a later date, she would file an application to cover the whole operation, including a "stone crusher." With that, the Board indicated that it was considering the petitioner's present application as a request for a full gravel pit, including a "stone crusher," and denied and dismissed the application altogether. Allen, 75 R.I. at 321-23, 66 A.2d at 369-70.
The Court held that the Board "clearly exceeded the scope of the application in passing judgment on matters not before them for determination." Id. at 324, 66 A.2d at 370. It determined that since the petitioner's application was confined to a request for permission to erect a building for a "washing plant," and nothing more, only the Board's determination as to the "washing plant" was deemed to be part of the Board's decision. "All other matters mentioned in that decision, either directly or by implication, are hereby expressly excluded therefrom as having no force and effect." Id. at 324, 66 A.2d at 370-71.
Island Restoration provides in Appendix A-7 of its application to the Board: "It should be noted that we are not increasing the number of tenants already on site with this application, but in fact, only moving the restaurant to the DodgeHouse and the retail to the former Eli's building (Fire # 457).See Application, Appendix A-7. In accordance with Allen the Board in the instant case is restricted to considering only that which is included in Island Restoration's application. See alsoGardiner, 101 R.I. 681, 688, 226 A.2d 698, 702 (holding that information in the application and on the plot plan tells the whole story). Accordingly, the applicant will be held to its representation in its application that Fire # 457 will be used as retail space.
Additionally, Island Restoration argues that the Board did not intend to impose such unreasonable and oppressive conditions on its grant of the parking variance. See Island Restoration's Memorandum of Law in Support of its Appeal, p. 7. In support of its argument, Island Restoration relies on the transcript of the May 20, 1996 hearing.
At the hearing, Spier pointed out that Island Restoration's application proposed that Fire # 457 would be used as retail space and that the applicant would be held to that representation. Davis persistently argues that Island Restoration did not know yet what type of use would occupy Fire # 457 and that it should not be limited to using Fire # 457 as retail. (Tr. at 5-6, 16-17.) Instead, Davis argued, the applicant should be allowed to use the building for any use that requires the same amount of parking as that which is required, under the ordinance, for retail. At one point Spier stated: "No, what we would say is that any use which required more parking would require a resubmittal to the Zoning Board." (Tr. at 17.) Island Restoration relies on this statement, which when taken out of context might appear to support its position. However, when considered in conjunction with the application, and in the context of the entire hearing, it does not. The Board clearly stated in its oral and in its final decision that it was "approv[ing] the request for a variance for three parking places . . . with the requirement that . . . the restaurant be in the existing building Fire Number 436 [sic], and that this plan is based on existing building Fire Number 457 using the retail space only." (Oral Decision, Tr. at 2.) (Emphasis added.) The written decision provides: "F. the building with fire # 457, now used as a restaurant, is to be used as retail space as identified in theapplication and for which the parking was calculated;. . . ." (Emphasis added.)
"Where a decision of a board . . . has been properly entered on the records of the board, it is not subject to attack on the basis of statements of board members that they did not actually favor the action. The courts will look solely to the decision recorded according to law to determine what the action of the board was." Kenneth H. Young, American Law of Zoning § 22.50.Record of vote (1997) (citing Sloane v. Walsh, 245 N.Y. 208,156 N.E. 668 (1927)). Here, substantial evidence exists on the record to sustain the Board's finding that the instant grant of a variance is conditioned on the applicant's using Fire # 457 as retail space only.
In Sloane, the Court of Appeals of New York articulated the significance and weight afforded to a required writing. It held that "where by law an act is required to be done in writing . . . the writing is, of course, the only permissible subject of proof. It is immaterial what the person intended; his act must be in the writing and must be judged by the writing alone." Sloane, 156 N.E. at 669 (citing Wigmore on Evidence § 2427). The court ruled that the resolution constituted the action of the board and that the "action [could not] be disputed by reference to the oral statements made by those who concurred therein. We can look only to the resolution." Sloane, 245 N.Y. at 214, 156 N.E. at 670.
Pursuant to G.L. § 45-24-61 (A), the Board is required to put its decision in writing. That writing, which is recorded and posted in the town hall, constitutes the decision of the Board. Both the written decision and the transcript of the May 20, 1996 oral decision reveal that the Board granted Island Restoration's parking variance on the condition that Fire # 457 be used as retail space only.
 The Sidewalk
Island Restoration argues that the second arbitrary condition imposed by the written decision — the construction of a sidewalk across town property, to wit: Chapel Street, was never approved by the Board on May 20, 1996. Pursuant to § 502 (E) of the New Shoreham ordinance ". . . Within the OHC . . . sidewalks shall be provided as part of the site development along all principal roads to provide pedestrian access to and between public and private facilities."
With its application for a variance, Island Restoration properly submitted the required plot plan or site plan showing the proper lot lines, street lines, and existing and proposed structures. See § 706 (B)(1). The site plan submitted to the Board indicated that Island Restoration intended to construct a brick sidewalk along its property and onto Chapel Street. See
Site Plan, dated March 6, 1996. Additionally, Tillson informed the Board that the site plans submitted by Island Restoration to the Building Official and to the Department of Public Works both evidenced the applicant's proposal to extend the construction of the sidewalk onto Chapel Street. (Tr. at 17-18.)
Our Supreme Court has held that the information in the application and on the site plan combine to constitute competent evidence upon which zoning boards may base their decisions. SeeGardiner, 101 R.I. at 688, 226 A.2d at 702. In Gardiner, the Board was required to designate the maximum size and location of a dwelling to be placed on an undersized lot. Although the Board did not expressly include the condition in its decision, the application and plot plan attached thereto indicated the maximum size of the dwelling and its precise location on the lot. The court held: "In granting the application the board of necessity incorporated the application and the plot plan in its decision; this could only mean that it was granting an exception permitting the erection of the house described on the plot plan in the exact location indicated thereon." Id.
In the instant case, the Board expressly incorporated Island Restoration's application and site plan into both its May 20, 1996 oral decision [". . . to the edge of the property line asnoted on the site plan as submitted;" (Tr. at 2)] and its June 4, 1996 written decision ". . . as shown on the site plan submittedat the public hearing; . . . to be used as retail space asidentified in the application. . . ." (Decision Letter, Paras. B, F)] (Emphasis added.) The Board was entitled to base its decision on the information provided and the representations made by Island Restoration in both the application and the site plan. Additionally, in accordance with Allen, the Board was limited to making determinations only on those representations in its decision. Allen, 75 R.I. at 324, 66 A.2d at 370-71.
This Court finds that the Board did not act arbitrarily or capriciously. Its written decision, which essentially mirrors its oral decision, lawfully imposed two conditions on the grant of the parking variance; the latter of which regards the sidewalk extension as presented by the petitioner's plans/application and is subject to the Department of Public Work's approval. The Board did not act in excess of its authority or in violation of ordinance or statutory procedure as it is permitted to impose reasonable conditions upon the grant of a variance. G.L. §45-24-19 (2)(b); see also Town of Warren v. Frost, 301 A.2d 572, 573 (R.I. 1973).
After a review of the entire record, this Court finds that the Board's decision is supported by the reliable, probative, and substantial evidence contained in the record and was not made upon unlawful procedure. Substantial rights of the petitioner have not been prejudiced. Accordingly, the Board's June 4, 1996 written decision is affirmed.
After proper notice, counsel shall submit the appropriate judgment for entry.