# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 7, 2010 Session

## STONEYBROOK GOLF COURSE, LLC v. CITY OF COLUMBIA

**Appeal from the Chancery Court for Maury County**
**No. 08-412     Robert L. Jones, Judge**

**No. M2009-01780-COA-R3-CV - Filed July 26, 2010**

Stoneybrook Golf Course, LLC, purchased approximately 190 acres of land ("the Property") – on part of which was located a golf course – with plans to develop the vacant land surrounding the course. Before purchasing the Property, Stoneybrook met with the mayor and other officials of the City of Columbia and received their verbal assurances of strong support for the annexation of the 190 acres into the City and the re-zoning of the area to permit the building of condominiums. After Stoneybrook purchased the Property, the city council of Columbia refused to go forward with the annexation and re-zoning until a comprehensive land use plan could be completed against which to evaluate the proposed re-zoning. Stoneybrook filed this action against the City, claiming, in essence, that the City's refusal to act promptly in accord with the verbal "commitment" constitutes an unconstitutional moratorium and, alternatively, that the City is estopped from refusing to re-zone the Property. The trial court dismissed the complaint on the pleadings. Stoneybrook appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Matthew E. Wright, Brentwood, Tennessee, and Roger L. Myers, Howell, Michigan, for the appellant, Stoneybrook Golf Course, LLC.

William N. Bates and Brandt M. McMillan, Nashville, Tennessee, for the appellee, City of Columbia.

## OPINION

The Property was zoned A-1 when Stoneybrook purchased it on January 17, 2007. In an A-1 zone, residential units cannot be more dense than one per acre. Stoneybrook's development plans are for the building of condominiums and other multi-family residences that would be more dense than one per acre. According to the allegations of the complaint, even though the Property is outside the municipal limits, the City must approve any development because the Property is "within the regional jurisdiction and Urban Growth Area of the City also referred to as the annexation reserve area."

Before purchasing the Property, Stoneybrook arranged a "pre-application meeting with the Mayor, City manager, City planner, City engineer, City attorney and all City department heads" to discuss Stoneybrook's plans and to "ascertain the level of support by the Mayor and City department heads for such a project." The meeting was held in November 2006. According to Stoneybrook, "[a]ll of the City officials in attendance at the meeting expressed unequivocal support for the proposed residential development, including a strong commitment to expeditiously process and approve the annexation and re-zoning petitions." After the meeting, Stoneybrook incorporated suggestions made at the meeting into a revised plan. Stoneybrook then scheduled a second meeting with "the Mayor and other City leaders" to confirm that they still supported the development and requisite zoning change to accommodate Stoneybrook's plans. According to Stoneybrook, "the Mayor and other City officials reiterated their strong support for the project and their commitment to expeditiously process and approve all necessary applications." Acting on these renewed assurances, Stoneybrook purchased the Property at a price of $2,400,000 and invested another $1,300,000 in modifying the Property.

In April 2007, Stoneybrook submitted a petition to annex the Property into the City along with an application for the necessary re-zoning to accommodate the planned density of 1.7 dwellings per acre.

The petition and application went before the planning commission in July 2007. The planning commission voted unanimously to approve both; it then sent them to the city council for its consideration. In the meantime, the City's planning office prepared proposed ordinance 3716, an ordinance to annex the Property, and proposed ordinance 3717, an ordinance to re-zone the Property, for submission to and consideration by the city council at its meeting to be held on August 16, 2007. Before ordinances 3716 and 3717 came up on the agenda, the city council was advised by the city attorney with regard to another proposed re-zoning ordinance, "that under the City's new Zoning Ordinance the Planning Commission has to make six specific findings and those findings need to be shown on the record." The

referenced requirement is found at City of Columbia Ordinance § 3.18.7 B (August 2005) which states:

> The Planning Commission in its review and recommendation, shall make specific findings with regard to the following grounds for an amendment and shall note the same in the official record as follows:
>
> 1. The rezoning is in agreement with the general plan for the area;
>
> 2. It has been determined that the legal purposes for which zoning exists are not contravened;
>
> 3. It has been determined that there will be no adverse effect upon adjoining property owners unless such effect can be justified by the overwhelming public good or welfare;
>
> 4. It has been determined that no one property owner or small group of property owners will benefit materially from the change to the detriment of the general public; and
>
> 5. It has been determined that conditions affecting the area have changed to a sufficient extent to warrant an amendment to the area's general plan or other applicable local plans, and consequently, the zoning map.
>
> 6. The availability of adequate school, road, parks, wastewater treatment, water supply, and stormwater drainage facilities.

The council voted to return numerous proposed re-zoning ordinances, some of which had already progressed to a second reading, to the planning commission "pursuant to . . . zoning ordinance [§ 3.18.7B]." Included in the "return" vote were proposed ordinances 3717 and 3716.[1]

---

[1]Although the complaint focuses on ordinance 3717 and omits mention of ordinance 3716 and the other pending ordinances, the complaint has attached to it as exhibit B the minutes of the August 16, 2007 city council meeting and all the other meetings material to the dispute.

Stoneybrook's re-zoning ordinance came before the planning commission at its next regular meeting. The city attorney advised the body that there was no "general plan[] for the area" and recommended that the re-zoning "be deferred until next month's meeting or until a specific plan . . . is completed." The planning commission followed the attorney's recommendation and voted to defer action to the next regular meeting. Instead of waiting until its next regular meeting, the planning commission held a special called meeting on September 26, 2007, the purpose of which was to discuss a general plan for land use.

In addition to the reference to a "general plan" found in section 3.18.7, the zoning ordinance uses other pertinent language in section 3.18.2(A) as follows:

> All petitions for rezoning shall be consistent with the *Comprehensive Plan* and any applicable *local plans*. A petition for rezoning shall not be approved by the City Council when there is a significant conflict with the *Comprehensive Plan* or applicable *local plans*, as determined by the Planning Commission.

(Emphasis supplied.) Considerable discussion, including public input, was generated at the commission meeting concerning whether the plan to be adopted should be comprehensive and detailed, or should be general so as to only identify the type use, such as residential versus commercial. The latter view prevailed.

The planning commission's "general" plan came before the city council for consideration at its meeting held October 18, 2007. The council declined to approve the commission's plan and voted instead to "send [the plan] back to the Planning Commission for additional detail regarding this specific area and to begin to move forward with the planning of a comprehensive plan for the entire urban growth area." Local residents had appeared at the meeting and expressed concerns regarding the lack of a detailed land-use plan.

The planning commission, however, refused to change the plan. Instead, the commission renewed its recommendation that the re-zoning be adopted and that the area be annexed.

In a meeting held December 6, 2007, the council again voted against adoption of the "general" plan approved by the commission and determined that a more detailed plan was needed before Stoneybrook's petitions could be considered.

Following an election, with a resulting change in the membership of the council, it again considered Stoneybrook's petition for annexation and request for re-zoning. Another item on the same agenda was whether to join with Maury County to develop a comprehensive land use plan for the area. The council approved the latter proposal and rejected the former. The matter came before the council on at least two more occasions with the same result, *i.e.*, the council refused to consider the re-zoning request on its merits until a comprehensive and detailed use plan for the area could be developed. Also, the council rejected a proposal to amend its zoning ordinance so as to delete any reference to a "Comprehensive Plan."

Stoneybrook then filed its complaint. It alleges that "the purported absence of a general plan as [a condition] to the approval of the [re-zoning and annexation] petitions was nothing more than a baseless hurdle raised by the City in deference to the meritless objections by the group opposing" the development.[2] Stoneybrook alleges that when the matter came before the council in October 2007, "the City at that point had a 1999 Comprehensive Growth Plan, a revised 2004 Comprehensive Growth Plan and a 'General Plan' adopted by the Planning Commission. . . ." According to Stoneybrook's complaint, "any one of these plans should have enabled the processing of [Stoneybrook's] rezoning petition for consideration on the merits . . . ." Further, Stoneybrook alleges that "the City council lacks any authority to adopt and/or decide the sufficiency of the General Plan, which is vested exclusively with the Planning Commission . . . under Tennessee Law." The complaint alleges that "the effect of the City Council's refusal to amend the ordinance or otherwise recognize the existence [of] multiple 'Comprehensive/General Plans' is the unlawful perpetuation of an indefinite moratorium on the approval of the Plaintiff's rezoning . . . ." Liberally construed, the complaint alleges that the actions of the City are arbitrary and capricious, amount to a violation of due process and equal protection, and are causing irreparable harm for which no adequate remedy exists at law. Also, the complaint alleges that Stoneybrook reasonably and justifiably relied upon the representations of the City officials that they would expeditiously process and approve all necessary applications. It also alleges that the City is estopped to refuse to process the re-zoning application on the basis of a lack of a sufficient plan.

Shortly after the pleadings closed, Stoneybrook moved the court for partial judgment on the pleadings. Stoneybrook sought an order (1) judicially declaring that there was already in existence an adequate plan allowing the city council to act on Stoneybrook's application and (2) requiring the City to consider Stoneybrook's re-zoning request on its merits. The trial court granted the first request, but denied the second. The court's order granting the motion in part states, in pertinent part:

---

[2]Stoneybrook does not challenge the City's failure to annex the Property. Stoneybrook does not want its property annexed unless it is also re-zoned to accommodate its development plans.

The Court . . . finds [that the Comprehensive Growth Plan established and approved as the City's urban growth boundary in 1999], as amended [in 2005], the city's zoning ordinance, and recommendations by the Planning Commission that the property be zoned and used for residential purposes may all be considered part of a general comprehensive plan that would permit the City Council to consider and possibly annex and zone the plaintiff's property.

This Court further finds, based upon the pleadings and the law, that the City Council could consider and act upon annexation and zoning of the plaintiff's property without any additional plans or amendment of existing plans. Therefore, the City Council is not required by its zoning ordinance or by general law to deny or delay the annexation and zoning until additional planning can be completed and considered for adoption.

While the plaintiff contends that the City Council must approve or deny the plaintiff's petition for annexation and zoning without delay, the Court has not been cited, nor has the Court found, any legal authority that would mandate such approval or denial within any certain time period, if the City Council, in its discretion, decided additional information and planning were needed before a final decision.

The plaintiff relies on Section 3.18.10(A) of the defendant's zoning ordinance as providing that the City Council "shall consider any recommendations by the Planning Commission" and "may approve the request, deny the request, or send the request back to the Planning Commission for additional consideration." That provision of the zoning ordinance seems to the Court to support the defendant's discretion in deciding whether and when to approve a request. It only mandates consideration of, but not a decision on, the Planning Commission's recommendations.

Even if the City Council has a limited time period to act upon a zoning application, it would seem obvious that the council could not be required to act upon zoning or property which was not yet in the city. The plaintiff has failed to convince the Court that it

-6-

is entitled to a partial judgment in its favor on the pleadings of the parties, when the Court has not been cited nor found any law mandating the annexation of the property in question.

The City then filed a motion for judgment on the pleadings, which the trial court granted. The crux of the court's order granting the motion was that "the court has not been cited, . . . nor has it found, any legal authority mandating the City Council's expeditious processing of [Stoneybrook's] petitions for annexation and rezoning." The court's order dismissed the action in its entirety. Stoneybrook filed a motion to alter or amend the trial court's last order, which the court denied. This timely appeal followed.

After the appeal was filed, the City adopted, on August 20, 2009, a comprehensive land use plan that covers the entirety of Stoneybrook's property. The City has put this before the Court on a motion for consideration of post-judgment facts, *see* Tenn. R. App. P. 14, and for dismissal of the appeal as moot. We previously granted the motion allowing consideration of the fact that the City has now adopted the plan referenced above, but ordered the parties to address the issue of mootness in their briefs and at oral argument.

## II.

The only issue Stoneybrook identifies for review is whether the trial court erred in granting the City's motion for judgment on the pleadings and dismissing the case. As we have noted, now that the City has adopted a comprehensive plan, the City asks us to dismiss the appeal as moot.

## III.

We recently stated the standard for reviewing a motion for judgment on the pleadings[3] in *Shaw v. Cleveland Utilities Water Div.*, E2009-00627-COA-R3-CV, 2009 WL 4250157 (Tenn. Ct. App. E.S., filed Nov. 30, 2009) (*perm. app. denied* May 13, 2010).

---

[3]Motions for judgment on the pleadings are the subject of Tenn. R. Civ. P. 12.03, which states:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

A motion for judgment on the pleadings is in effect a motion to dismiss for failure to state a claim upon which relief can be granted. **Waldron v. Delffs**, 988 S.W.2d 182, 184 (Tenn. Ct. App. 1998). It "admits the truth of all relevant and material averments in the complaint but asserts that such facts cannot constitute a cause of action." **Id**. Both the trial court and this court must accept as true "all well-pleaded facts and all reasonable inferences drawn therefrom" alleged by the party opposing the motion. **Cherokee Country Club, Inc. v. City of Knoxville**, 152 S.W.3d 466, 470 (Tenn. 2004). The ultimate determination of whether the facts alleged make out a cause of action is a question of law. Our review of questions of law is de novo, with no presumption of correctness. **Gunter v. Laboratory Corp. of America**, 121 S.W.3d 636, 638 (Tenn. 2003).

**Id**. at *4.

IV.

We begin with the City's suggestion that, with its adoption of a comprehensive plan that encompasses the Property, this case became moot. A concise and accurate statement of the law of mootness has been provided in an earlier opinion of this Court:

The determination of whether a case is moot is a question of law. **Alliance for Native American Indian Rights in Tennessee, Inc. v. Nicely**, 182 S.W.3d 333, 339 (Tenn. Ct. App. 2005)(citing **Charter Lakeside Behavioral Health Sys. v. Tennessee Health Facilities Comm'n**, No. M1998-00985-COA-R3-CV, 2001 WL 72342 at *5 (Tenn. Ct. App. Jan. 30, 2001); **Orlando Residence, Ltd. v. Nashville Lodging Co.**, No. M1999-00943-COA-R3-CV, 1999 WL 1040544 at *3 (Tenn. Ct. App. Nov. 17, 1999)). A moot case is one that is no longer justiciable because it no longer involves a present, ongoing controversy. **Alliance for Native American Indian Rights** at 338; **McIntyre v. Traughber**, 884 S.W.2d 134, 137 (Tenn. [Ct.] App.1994). A case will generally be considered moot if it no longer serves as a means to provide relief to the prevailing party. **McIntyre** at 137. A moot case is one that

seeks a judgment on a matter that, when rendered, cannot have any practical effect upon a then-existing controversy; one in which no relief can be granted; or one in which the judgment rendered cannot be carried into effect. ***Boyce v. Williams***, 215 Tenn. 704, 389 S.W.2d 272, 277 (Tenn. 1965). Cases must remain justiciable throughout the course of the litigation and a case that becomes moot after filing but before judgment will be dismissed. ***Alliance for Native American Indian Rights*** at 338.

***Villas On Blue Mountain, L.P. v. Tennessee Housing Development Agency***, No. M2009-01250-COA-R3-CV, 2010 WL 1539843, at *3 (Tenn. Ct. App. M.S., filed April 16, 2010). When examined in light of the above criteria, we find that this case has not been rendered moot by the passage of a comprehensive land use plan. Construed liberally, the complaint charges that the City was legally obligated to consider its request for re-zoning in light of the "general" plan that the planning commission proposed without the delay incident to the adoption of a new comprehensive plan. The complaint asks that the City be made to consider Stoneybrook's request on the merits. This has not been done. Thus, if the complaint otherwise states a claim upon which we or the trial court could order a consideration of the re-zoning request on the merits, there would be the potential for ordering relief that would have an effect on both parties to this dispute. We therefore hold that the case is not moot.

The thrust of Stoneybrook's case, both as to constitutional and common law claims, is that the City was legally obligated to consider the request for re-zoning under land use plans that had already been approved or at least proposed, and that Stoneybrook's property rights were therefore violated when the city council put off considering its requests until it had before it a comprehensive plan more to the council's liking. We believe this proposition is defeated by ***SCA Chemical Waste Services v. Konigsberg***, 636 S.W.2d 430 (Tenn. 1982), a case that Stoneybrook relies upon. In ***Konigsberg***, a company in the business of disposing of hazardous waste attempted to secure the necessary permits to build a plant in Shelby County before a new zoning ordinance could take effect. ***Id***. at 432. The zoning ordinance was passed on October 6, 1980, but did not take effect until January 1, 1981. The waste disposal company applied for the permits before the ordinance was enacted and entered into a real estate contract to purchase land upon which to build the subject plant two days after the ordinance was enacted. ***Id***. at 432-33. The Shelby County Commission passed a resolution forbidding the issuance of any permits for construction of hazardous waste plants until January 15, 1981, fourteen days after the new zoning ordinance was to go into effect. ***Id***. at 433. The ultimate question in the case was whether Shelby County, which clearly had the legal authority to issue a building permit, could postpone the issuance of any permits until the more stringent zoning standards could take effect. ***Id.*** at 436. The Supreme Court upheld the actions of Shelby County for the following reasons:

Resolutions or ordinances of the type here considered have been referred to in cases from other jurisdictions as "stopgap" ordinances, "interim" ordinances, and as "emergency" ordinances because of their function and purpose to preserve temporarily the status quo of the municipality or section thereof to which they apply until a pending permanent zoning regulation could be finally adopted. As was noted by the California Supreme Court, courts may take judicial notice of the fact that it takes much time to work out the details of a comprehensive zoning plan and it would be destructive of the plan if, during the period of its incubation and consideration, persons seeking to evade its operation should be permitted to enter upon a course of construction that would progress so far as to defeat, in whole or in part, the ultimate execution of the plan. *See Miller v. Board of Public Works*, 195 Cal. 477, 234 P. 381, 38 A.L.R. 1479 (1925), error dismissed 273 U.S. 781, 47 S.Ct. 460, 71 L.Ed. 889 (1927). Assuming that the municipality has the legislative authority to adopt such ordinances, and assuming that such an ordinance or resolution is of limited duration for a period of time that is reasonable under the circumstances and has been enacted in good faith and without discrimination, such ordinances have generally been upheld, especially by the later cases, so long as the purpose is to study and to develop a comprehensive zoning plan which does in fact proceed promptly, culminating in the expeditious adoption of appropriate zoning ordinances when the study is completed. *Almquist v. Marshan*, 308 Minn. 52, 245 N.W.2d 819 (1976); *Sherman v. Reavis*, 273 S.C. 542, 257 S.E.2d 735 (1979); *Taylor v. City of Little Rock*, 266 Ark. 384, 583 S.W.2d 72 (1979); *A. Copeland Enterprises, Inc. v. City of New Orleans*, La.App., 372 So.2d 764 (1979); *CEEED v. California Coastal Zone Conservation Commission*, 43 Cal.App.3d 306, 118 Cal.Rptr. 315 (1974); *Anderson v. Pima County*, 27 Ariz.App. 786, 558 P.2d 981 (1976); *Frisco Land & Min. Co. v. State*, 74 Cal.App.3d 736, 141 Cal.Rptr. 820 (1977); *McCurley v. El Reno*, 138 Okl. 92, 280 P. 467 (1929).

* * *

We consider now the reasonableness of the instant resolutions. . . . . In a case involving facts closely approximating those in the instant case, the South Carolina court, in **Sherman v. Reavis**, *supra*, stated:

>We hold that a municipality may properly refuse a building permit for a land use in a newly annexed area when such use is repugnant to a pending and later enacted zoning ordinance.
>
>This holding, which is followed by numerous jurisdictions, is supported by sound reasoning. *See*, *generally*, **Annot**., 50 A.L.R.3d 596, 623-32 (1973). As stated in **Chicago Title & Trust Company v. Village of Palatine**, 22 Ill.App.2d 264, 160 N.E.2d 697, 700 (1959):
>
>>It would be utterly illogical to hold that, after a zoning commission had prepared a comprehensive zoning ordinance or an amendment thereto, which was on file and open to public inspection and upon which public hearings had been held, and while the ordinance was under consideration, any person could by merely filing an application compel the municipality to issue a permit which would allow him to establish a use which he either knew or could have known would be forbidden by the proposed ordinance, and by so doing nullify the entire work of the municipality in endeavoring to carry out the purpose for which the zoning law was enacted. 257 S.E.2d at 737.

We approve the quoted statement from the **Sherman** opinion. It is obvious that in the case before us the relator, SCA Chemical

Waste Services, Inc., was engaged in a race to avoid the more stringent zoning and permit requirements for the operation of hazardous waste treatment plants which were contained in the new ordinance to become effective on January 1, 1981. We hold that the county acted properly and had authority to suspend the issuance of permits for such construction pending the effective date of its new joint ordinance resolution.

*Konigsberg*, 636 S.W.2d at 434-37.

Stoneybrook attempts to distinguish *Konigsberg* by pointing to the fact that the City in this present case did not pass a resolution or ordinance enacting a moratorium whereas Shelby County did pass such a resolution. While there is authority for the proposition that a moratorium that affects land use must follow notice and a hearing sufficient to support zoning ordinances, we do not believe that authority requires a result in the present case at odds with *Konigsberg*. *See Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 471 (Tenn. 2004)(distinguishing *Konigsberg* on the basis of the pending ordinance that would change the status quo). It is clear to us from the various minutes of meetings that were attached to the complaint that everything that was done was done in open meetings based on matters that were on the agenda for discussion. Thus, what was done, or more accurately not done, was accompanied by notice to, and an opportunity to heard by, all concerned. Stoneybrook's chief complaint cannot be that it did not have notice and a hearing; if anything it had too much notice and too many hearings that inured to the benefit of the public, the result of which was to sway city council away from what some officials had promised in private before notice and a hearing could be had. Also, we believe that the distinction as drawn by Stoneybrook, and as identified in the *Cherokee* case, is only applicable to the situation where the complaining party had a clear right to a particular result but for the delay or moratorium. For example, in *Cherokee,* the country club had a right to a demolition permit which was defeated by the "moratorium" by which the City of Knoxville changed the status quo. In the present case, Stoneybrook is the party asking to change the status quo. Without the concurrence of the city council, Stoneybrook had only the right to build one residential unit per acre. All the City did was not accept the proposed change until it could study it carefully in light of detailed standards. Thus, we hold that *Konigsberg* controls the outcome in the present case and that the City did not violate Stoneybrook's rights by refusing to evaluate Stoneybrook's request for re-zoning until it could evaluate that request in light of a comprehensive plan.

We conclude with the issue of estoppel. The factual predicate alleged by Stoneybrook for applying estoppel is that "[a]ll of the City officials in attendance at the [pre-application] meeting expressed unequivocal support for the proposed residential development, including

-12-

a strong commitment to expeditiously process and approve the annexation and rezoning petitions" and in reliance on these assurances Stoneybrook invested in the Property. We begin by noting that "Tennessee does not liberally apply the doctrine of promissory estoppel." ***Barnes & Robinson Co. v. OneSource Facility Services, Inc.***, 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006). Moreover, governmental entities "are not subject to equitable estoppel . . . to the same extent as private parties." ***Bledsoe County v. McReynolds***, 703 S.W.2d 123, 124 (Tenn. 1985). It takes "very exceptional circumstances" to invoke the doctrine of estoppel against a municipality. ***Id***. The facts alleged in this case come nowhere near to justifying estoppel against the City.

The fundamental problem is that, based upon something that happened in informal discussions in an unpublicized meeting, Stoneybrook is trying to use estoppel to force the City into doing something that could only be done by city council at a public hearing after due notice. Anyone "dealing with municipal officers, boards, or committees is bound at his peril to take notice of the limitation of their authority." ***City of Lebanon v. Baird***, 756 S.W.2d 236, 244 (Tenn. 1988)(*quoting* ***Kries & Co. v. City of Knoxville***, 237 S.W. 55, 57 (Tenn. 1921)). The contents of public documents, including the city charter and ordinances, and state statutes, are readily available to anyone dealing with a city, and within their presumed knowledge. ***Id.*** We need not recite the city charter, nor the zoning ordinance nor the statutes vesting the legislative power of city government in the city council. It is axiomatic that an elected legislative body governs in open meetings.

We will address, only briefly, Stoneybrook's contention that "the City Council lacks any authority to adopt and/or decide the sufficiency of the General Plan, which is vested exclusively with the Planning Commission as the Regional Planning Commission under Tennessee law." Stoneybrook cites Tenn. Code Ann. § 13-3-301 (1999) for this proposition. We will not quote the statute, which deals with county regional planning commissions, or otherwise deal with it at length. The statute cannot control in this situation. Regardless of any sweeping authority given to the regional planning commission, the power to annex and re-zone is vested in the city council of the City of Columbia. The City's charter vests all powers "in an elective council," Art. I, § 1.03, to be exercised in public meetings. Art. II, § 2.05. Stoneybrook is asking for a use that is not allowed by the present zoning. The planning commission has limited authority; it can only "recommend" adoption or amendment of zoning. The actual adoption or amendment is the prerogative of the elected city council. Columbia Ordinance §§ 3.17, 3.18, 3.19 (August 2005). This could not be clearer. We hold therefore that the power to determine the considerations against which Stoneybrook's request for re-zoning was to be compared lay with the city council and not the planning commission. We further hold that the concept of estoppel does not apply. The City is not required to approve Stoneybrook's request on the basis of what happened in an informal pre-application meeting.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed against the appellant, Stoneybrook Golf Course, LLC. This case is remanded, pursuant to applicable law, for collection of costs assessed below.


_____
CHARLES D. SUSANO, JR., JUDGE